THE HARTFORD, as Subrogee of the Chicago Board of Options Exchange, Plaintiff-Appellant, v. BURNS INTERNATIONAL SECURITY SERVICES, INC., *et al.,* Defendants-Appellees.

First District (4th Division)   No. 86—3476

Opinion filed June 23, 1988.

Johnson, Cusack & Bell, of Chicago (Paul J. Wisner and Steven I. Rapaport, of counsel), for appellant.

Sandra Young and Maria G. Enriquez, both of Purcell & Wardrope, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, The Hartford, as insurer and subrogee of the Chicago Board of Options Exchange (hereinafter the Exchange), filed suit in the circuit court of Cook County against defendants, Burns International Security Services, Inc. (Burns), and its employee, Michael Word, to recover the proceeds paid to the Exchange for property damages. The trial court granted defendants' motions to dismiss all counts brought against them by The Hartford, as subrogee of the Exchange. The sole issue for review is whether the trial court properly found that the waiver of subrogation rights clause contained in the contract between Burns and the Exchange is enforceable and, therefore, a bar to this action.

We affirm.

The record shows that on May 4, 1979, Burns contracted with the Exchange to provide security services seven days a week, 24 hours a day, for the space it occupied in the Chicago Board of Trade Building at 141 West Jackson Boulevard, in Chicago.

On October 6, 1979, a fire occurred in the offices of the Exchange on the 22nd floor of the Board of Trade Building. On the day in question, Michael Word was assigned to the security detail provided by Burns on behalf of the Exchange. Plaintiff paid the Exchange for the property damage caused by the fire.

On February 5, 1986, plaintiff filed its second amended complaint, alleging that the fire occurred as a result of the negligence of defendants. Defendants moved to dismiss the second amended complaint. Originally, defendants' motions were denied without prejudice; however, the court granted their motion to vacate that order. On November 10, 1986, the court granted the motions to dismiss, with prejudice, counts IV through VII, the only counts pertaining to plaintiff as subrogee of the Exchange. It is from this decision that plaintiff appeals.

Plaintiff contends that the waiver of subrogation rights clause contained in the contract between Burns and the Exchange is not enforceable for the following reasons: (1) the trial court failed to rule on whether New York law or Illinois law governs; (2) the clause violates New York law and Illinois public policy; (3) the insurer's right of subrogation cannot be waived without giving it notice prior to the loss; and (4) the clause is ambiguous and inconsistent with the limits of liability section.

Plaintiff argues that the trial court failed to make a ruling on whether New York law or Illinois law governs this case. Plaintiff claims that New York law controls because the contract between Burns and the Exchange contained a choice of law provision stating that New York law should govern the terms of the contract.

■■ Illinois has recognized the validity of an express choice of law provision contained in a contract. (*Reighley v. Continental Illinois National Bank & Trust Co.* (1945), 390 Ill. 242, 249; *Potomac Leasing Co. v. Chuck's Pub, Inc.* (1987), 156 Ill. App. 3d 755, 757-58; *Sumner Realty Co. v. Willcott* (1986), 148 Ill. App. 3d 497, 500.) However, the law will be given effect subject to certain limitations: whether the choice of law provision contravenes Illinois public policy and whether there is some relationship between the chosen forum and the parties or the transaction. (*Potomac Leasing Co.,* 156 Ill. App. 3d at 758-59.) There is no issue raised on the latter. Nevertheless, conflict of law rules are resorted to only when a difference in the law would be determinative of the outcome of the litigation. *International Administrators, Inc. v. Life Insurance Co. of North America* (7th Cir. 1985), 753 F.2d 1373, 1376 n.4.

■■ The contract entered into between Burns and the Exchange contains a choice of law provision stating that "this agreement shall be governed by the laws of the State of New York." The provision at issue states: "Client [the Exchange] *** waives any and all rights of subrogation that any insurer of [the Exchange] may have against Burns." Plaintiff urges that this provision is not valid or enforceable under the laws of New York and the public policy of Illinois. Plaintiff attempts to distinguish the case law in New York by claiming that the waiver of subrogation rights provisions in those cases are not comparable to the one in the present case. Specifically, plaintiff argues that the holdings in the cases cited below are inapplicable here because those cases involved two or more parties, with each waiving their rights to recover from one another and requiring that one of the parties procure insurance to cover any losses.

It is well established under New York law that, absent any indication of overreaching or unconscionability, a waiver of subrogation rights provision in a contract does not violate the general obligations law or public policy of New York. *Interested Underwriters at Lloyds v. Ducor's, Inc.* (1984), 103 A.D.2d 76, 478 N.Y.S.2d 285, 286; see also *Tokio Marine & Fire Insurance Co. v. Employers Insurance* (2nd Cir. 1986), 786 F.2d 101; *Trump-Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.* (1985), 106 A.D.2d 242, 485 N.Y.S.2d 65.

Plaintiff's distinction is meritless. Whether the waiver of subroga-

tion rights was mutual or not does not affect the validity of the contract. Principles of freedom of contract do not require a trade-off of equal promises. Moreover, there is no issue raised nor is there any evidence that the waiver of subrogation rights provision is unconscionable.

Plaintiff poses two arguments to support its position that the waiver of subrogation rights provision (hereafter waiver provision) violates the public policy of New York and Illinois. It first asserts that any contractual provision limiting the liability of a security service agency directly contravenes the General Business Law of the State of New York (N.Y. Gen. Bus. Law §70 *et seq.* (McKinney 1968)) and "An Act to provide for Licensing and Regulating Detectives ***" (Ill. Rev. Stat. 1983, ch. 111, par. 2601 *et seq.*). (This statute was repealed, effective January 5, 1984, by Public Act 83—1069. However, this repeal has no bearing on the disposition of this case.) Secondly, plaintiff argues that under case law in New York and in Illinois, exculpatory provisions in contracts may be rendered void as against public policy if a special social relationship of a semipublic nature is found to permeate the transaction between the contracting parties. Accordingly, plaintiff asserts that the type of duties performed by Burns was of a semipublic nature.

■ Both statutes state that a private detective business or patrol agency, including security services, is at all times legally responsible for the good conduct of each and every person so employed. (N.Y. Gen. Bus. Law §81(1) (McKinney 1968); Ill. Rev. Stat. 1983, ch. 111, par. 2622(10).) However, there is nothing in the record to establish that it was the conduct of a Burns employee that caused the fire, thereby making the New York and Illinois statutes applicable, or to support plaintiff's contention that the waiver provision contravenes those statutes. Hence, plaintiff fails to bring itself within the rule in which it advocates.

■ To support its argument that the waiver provision violates the public policy of New York, plaintiff cites *St. Vincent's Medical Center v. Vincent E. Iorio, Inc.* (1974), 78 Misc. 2d 968, 358 N.Y.S.2d 993. This case stated that "public service corporations and quasi public businesses cannot contract to absolve themselves from liability for their own negligence." (*St. Vincent's Medical Center,* 78 Misc. 2d at ____, 358 N.Y.S.2d at 995.) We are not convinced by plaintiff's argument that Burns is a public service corporation or a quasi-public business, or performs any duties of public service. Therefore, plaintiff's reliance on *St. Vincent's* is misplaced.

■ Plaintiff is correct in stating that Illinois case law provides

that an exculpatory clause can be held void as against public policy, absent legislative directive, "if a special social relationship of a semipublic nature is found to permeate the transaction between the [contracting] parties." (*McClure Engineering Associates, Inc. v. Reuben Donnelley Corp.* (1981), 101 Ill. App. 3d 1109, 1111, quoting *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 418.) Relationships such as employer-employee, common carriers, innkeepers, bailees for hire, and residential landlords, where the parties were unequal in bargaining power, are examples of those special relationships. (*First Financial Insurance Co.*, 69 Ill. App. 3d at 418; *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 473.) However, "[t]here is no precise definition of public policy, and consequently no absolute rule by which a contract can be measured or tested to determine whether or not it is contrary to public policy. Each case, as it arises, must be judged and determined according to its own peculiar circumstances." *Zeigler v. Illinois Trust & Savings Bank* (1910), 245 Ill. 180, 193.

In *Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, which involved a contract for alarm protection services, the court rejected plaintiff's contention that a liquidated damage provision in the contract was unenforceable as against public policy. The court found no special relationship existed between the security company and the plaintiff. The court stated: "[T]he relationship between these two corporations, which was voluntarily entered into at the time these contracts were negotiated and signed, is not of the semipublic character inherent in those five classes of cases *** where certain limitations on liability have been held void." *Pick Fisheries, Inc.*, 35 Ill. App. 3d at 474.

*Bastain v. Wausau Homes, Inc.* (N.D. Ill. 1986), 635 F. Supp. 201, provides additional direction on Illinois treatment of waiver provisions. *Bastain* involved a preprinted contract for sale of a prepackaged home. The contract contained a waiver provision, which stated that the buyer waived all claims for recovery from the seller for all loss and damage which was collectable under any insurance policy. The purchasers of the home brought an action against the sellers for losses they suffered in a fire caused by a defective heater. Purchasers argued, as plaintiff does in the instant case, that the enforcement of the waiver provision would be unconscionable and against the public policy of Illinois. The court stated: "Illinois courts, in evaluating such contract terms, balance one set of legal principles, such as compensating individuals for their injuries and requiring tortfeasors or parties who have breached their contracts to pay the damage which their con-

duct has caused, with another principle, freedom of contract, including the freedom of parties to a contract to allocate risk of loss. [Citations.]" (*Bastain,* 635 F. Supp. at 203.) In striking this balance, the court rejected the purchasers' argument and held that under principles of freedom of contract, parties are free to allocate their risk of losses as they see fit. It further held that the waiver provision did not leave the injured party uncompensated and waived claims only to the extent that they were covered by insurance. Therefore, the court concluded, the waiver provision was neither unconscionable nor did it contravene the public policy of Illinois.

■■ We do not believe that the facts of the present case lend themselves to the conclusion that plaintiff urges us to reach. The rationale of *Fisheries* and *Bastain* is applicable to the instant case. Here, we are dealing with two corporations which voluntarily entered into a contract at arm's length, with full freedom to do so. The waiver provision in question here is not a true exculpatory clause. It is merely an agreement between the parties to shift most of the risk of loss to a third party, namely: the Exchange's insurance company, *i.e.,* The Hartford. The clause did not immunize Burns from all liability nor did it require the Exchange to give up all claims against Burns. The Exchange gave up only its rights against Burns to the extent that it was insured. Thus, the waiver provision is legal in New York; it does not violate Illinois public policy; and the outcome of the litigation would be the same under New York law and Illinois law. Accordingly, there is no need for this court to entertain the conflict of laws argument.

Plaintiff additionally asserts that under Illinois law an insurer's right of subrogation is not waived by its insured's release of a tortfeasor where the tortfeasor or insurance carrier has knowledge of the insurer-subrogee's interest prior to the release. It further urges that the insurer's rights are prejudiced by the waiver provision.

■■ "Where an injured party executes a release to the tortfeasor of any and all claims which he may have because of an accident, there arises a bar to any action against the tortfeasor by either the injured party or his insurer-subrogee." (*Shaw v. Close* (1968), 92 Ill. App. 2d 1, 3; 6A J. Appleman & J. Appleman, Insurance Law & Practice §4092, at 239 (1972).) The scope and extent of a release is determined by the intent of the parties as expressed in the contract. *Shaw,* 92 Ill. App. 2d at 3.

Here, the contract specifically states: "Client [the Exchange] hereby waives any and all rights of subrogation that any insurer of [the Exchange] may have against Burns." This provision is clear and

shows that the parties intended that the insurers of the Exchange would cover any loss without bringing a later subrogation action against Burns. Furthermore, there is no evidence in the record that Burns or its insurers had knowledge of the insurer's interest prior to the release of plaintiff's alleged subrogation right.

Finally, plaintiff urges that, despite public policy considerations, the waiver provision is ambiguous and inherently inconsistent with the limits of liability provision. For these reasons, plaintiff claims the contract should be construed against the drafter, Burns.

■ We acknowledge the rule that where there is ambiguity in the contract prepared by one of the parties such ambiguity should be construed against that party. Nevertheless, "[t]his rule of construction *** does not justify construing a contract against an insurer when no real ambiguity exists. [Citation.] If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made. [Citation.]" *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 495.

We do not find any ambiguity or inconsistency in the two provisions. The plain meaning of the waiver provision is that it applies if, as here, the Exchange's insurer pays the Exchange for its loss and then seeks to recover that amount from Burns. The plain meaning of the limitation of liability provisions is that it limits the amount of recovery the Exchange could receive on an uninsured loss if the Exchange brought an action.

■ Considering the particular facts of the instant case, we conclude that the clause in question is a valid waiver provision. It is set forth in clear and explicit terms. There is no evidence to support plaintiff's contentions that the waiver provision contravenes New York law and the public policy of Illinois. Here, where there is no claim of fraud or overreaching, we cannot say that these parties did not intend to waive subrogation rights. Moreover, the parties involved are two corporate entities which voluntarily entered into a contract.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

McMORROW and LINN, JJ., concur.