JEWEL COMPANIES, INC., Plaintiff-Appellee, v. JOSEPH SERFECZ *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—90—1096

Opinion filed September 30, 1991.

Lynda J. Khan, of Chicago, for appellants.

Rudnick & Wolfe, of Chicago (Gerald B. Lurie, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This appeal concerns the interpretation of a lease that was signed on July 1, 1963, by the plaintiff, Jewel Companies, Inc. (Jewel), as lessee, and defendants' predecessor in interest, Chicago Title and Trust Company, as lessor, for land and a store to be built in the Grove shop-

ping center in Elk Grove Village. Defendants Joseph Serfecz (Serfecz) and Mount Prospect State Bank (MPSB) are the successor lessors. Mr. Loren Galbraith, Jewel's former real estate and construction specialist, negotiated the lease on behalf of Jewel, and following execution of the lease, the main store was built and Jewel began to occupy the premises.

The lease provided for a 15-year term and options for three successive five-year renewals. It provided that the minimum rental for the main building was $2 per square foot, for a total of $44,400 per lease year, and that Jewel was to pay a percentage rental, amounting to 1% of sales in excess of $4,440,000.

The lease also provided *inter alia* (1) that the lessee had the option to enlarge the leased premises by the construction of an addition to the building, said addition not to exceed 7,800 square feet (paragraph 40(a)); (2) that if the lessor did not build the addition, the lessee could build it at its own expense (paragraph 40(d)); (3) that on the 30th day following the completion of the construction of the addition, the original term or renewal thereof, as the case may be, would be automatically extended for 15 years, followed by the optional renewal terms (paragraph 40(f)); and (4) that the minimum annual rental was to increase by $2 per square foot of the addition and the sales base for the percentage rental would increase up to $6 million.

Jewel built the addition in 1971 during the original term of the lease at an actual cost of construction of $227,395. Thus, the term of the lease was extended by 15 years, making the new termination date September 13, 1986. In September 1986 prior to the expiration of the lease, Jewel exercised its first option to renew for an additional five-year term through September 1991. In the interim, in 1977 Serfecz purchased the shopping center and became the beneficial owner of the land trust for which MPSB is the trustee.

Based on the addition, the minimum rental due under the lease increased by $15,600 (7,800 square feet times $2 per square foot) annually, and beginning on the 30th day after completion of the construction of the addition, Jewel began to exercise its recoupment rights as delineated in paragraph 40(g) of the lease. Paragraph 40(g) states, in relevant part:

"[P]rovided that in the event said addition is constructed by Lessee at its expense, Lessee may recoup or set off from said increase in minimum rent a sum per lease year equal to 10.126% of the Cost of Construction (being the sum required to amortize the Cost of Construction at six percent (6%) per

annum over fifteen (15) years on a level monthly payment basis)."

Beginning with the renewal term in September 1986, at which time Jewel had recouped $234,000, it continued to offset rental payments at the same rate. In September 1987 Serfecz notified Jewel that, in his opinion, Jewel's recoupment rights ended in March of 1986 when it had recouped $227,395 or the actual cost of construction. He demanded Jewel to return the excess it had recouped between March 1986 and September 1986 and served it with a landlord's ten-day notice. Jewel returned the $22,800 "excess" under protest, filed the instant declaratory judgment lawsuit, vacated the premises, and moved into a new store it had recently built in a shopping center across the street.

Jewel and defendants Serfecz and MPSB filed motions for summary judgment, each arguing that the lease was unambiguous in its favor. On March 13, 1989, the trial court denied the motions, found that the lease was ambiguous and directed the parties to conduct discovery to determine the intent of the original parties to the lease with respect to the recoupment clause.

Attached to defendants' motion for summary judgment was a letter dated May 1, 1972, written by Ms. Riley to the former manager of the premises. Ms. Riley was Jewel's lease administrator, whose responsibilities included summarizing the provisions of the lease, calculating the amount of rent due from Jewel and communicating with the lessor. The May 1 letter stated that the cost of construction was $227,394.67 and that pursuant to the terms of the lease Jewel had a right to recoup or offset 10.126% of the "cost of construction," which amounted to $23,025.98. It further stated, however, "since the lease stipulates that the recoupment may be made from the *increase in minimum rental* *** we may recoup a total of only $15,600 per lease year, rather than the $23,025.98."

During her deposition, however, Ms. Riley stated that she now believed her letter of May 1, 1972, to Mr. Victorine was incorrect to the extent that it referred only to recoupment for the actual cost of construction rather than recoupment for the cost of construction plus an interest factor. She also stated that "[i]t was my understanding that we were to recoup the cost of construction plus the factor, however that 10.126 percent relates, but we could recoup the cost of construction plus a rate of interest, which I believe was 6 percent."

Also disclosed during discovery was a memorandum written by Mr. Galbraith on February 13, 1962, in which he stated that if "we pay for the addition *** the owners will repay Jewel as if it was a

loan. The loan to be repaid at six percent (6%) interest with constant level payments over the 15 year term." However, like Ms. Riley, during the deposition Mr. Galbraith gave another interpretation of what he thought the parties intended when they first entered into the lease. During the deposition, he stated that the parties intended that Jewel could recoup both its cost plus interest; however, they did not expect Jewel to recoup the amount during the first 15-year period following the construction. The record also contained statements issued by Jewel's accounting department and an affidavit of Mr. John Lincoln, defendants' qualified financial consultant.

Following discovery, defendants filed a new motion for summary judgment and Jewel filed a cross-motion for summary judgment. Jewel contended that pursuant to paragraph 40(g), it was entitled to recoup $345,525.65, which represented the actual cost of construction plus 6% interest per year, amortized over a term of 15 years, and that it was entitled to set off against the annual increased minimum rent until such time as it recouped the entire amount. Defendants claimed that Jewel could recoup only the actual cost of construction and was limited to the 15-year term in which to recoup that amount.

The trial judge signed an order on March 26, 1990, denying defendants' motion for summary judgment and granting Jewel's cross-motion for summary judgment, in which he held that "Jewel is entitled to recoup its costs of construction plus six percent (6%) interest amortized over 15 years, the sum of $345,525.65, all as provided under paragraph 40(g) of the parties' lease, and that the lease contains no 15 year limitation on the time within which Jewel shall recoup said sum." Defendants have appealed from that decision. We reverse for the following reasons.

As a threshold issue, Jewel questions whether the appellate court has jurisdiction to review the trial court's order of March 13, 1989, on the ground that defendants failed to specify such order in their notice of appeal pursuant to Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)). Rule 303 provides that the notice of appeal "shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (134 Ill. 2d R. 303(c)(2).) However, it is well settled that a notice of appeal is to be liberally construed and should be considered as a whole. (*Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 479, 422 N.E.2d 949.) Moreover, an appeal from an unspecified judgment is not waived (1) where the deficiency is one of form rather than substance or (2) where the unspecified judgment is "a step in the procedural progression leading to the judgment speci-

fied in the notice of appeal." *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 435, 394 N.E.2d 380.

■ In the instant case, defendants specified the March 1990 summary judgment in their notice of appeal, but did not specify the March 1989 order. The trial court's order of March 1989 found that the recoupment provision was ambiguous and directed discovery. Although we disagree with the propriety of that decision, we note that the trial court's finding that the lease provision concerning recoupment was ambiguous constituted but one step in the procedural process leading to the summary judgment in favor of Jewel entered in March 1990. Accordingly, defendants' notice of appeal from the circuit court's final order of March 1990 was sufficient to confer jurisdiction upon this court to also review the March 1989 order.

■ We believe that the trial court's orders of March 1989 finding paragraph 40(g) to be ambiguous and of March 1990 granting summary judgment in favor of Jewel were both improper, as a matter of law. Summary judgment is proper when the issue is determinable solely as a matter of law. (*Smith v. Rengel* (1981), 97 Ill. App. 3d 204, 422 N.E.2d 1146.) Where the facts are not in dispute, interpretation of a contract is a question of law which can be decided on a summary judgment motion; moreover, as a question of law, interpretation of a contract can be made on review independently of the trial court's judgment. (*Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 557 N.E.2d 1281.) Summary judgment will be granted only if the pleadings, affidavits and depositions on file reveal that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 452 N.E.2d 649.

■ Here, paragraph 40(g) with regard to the recoupment provision is clear on its face. We have reviewed the lease and found that the clear formula set forth in 40(g) allowed Jewel to recoup a percentage (10.126%) of its actual construction cost ($227,395) against its increased rental payments ($15,600) per lease year for 15 years. Although 10.126% of the actual cost of construction amounted to $23,026, Jewel could not recoup such amount because paragraph 40(g) also provided that recoupment was limited to the increased minimum rental of $15,600. Where contract language is plain, its meaning clear, and no absurdity is involved, the agreement must be enforced as written. (*Srivastava v. Alia, the Royal Jordanian Airline* (1985), 129 Ill. App. 3d 988, 473 N.E.2d 564.) Furthermore, the rights of the parties are limited by the terms expressed in the contract. *A.A. Conte, Inc. v.*

*Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 477 N.E.2d 30.

Moreover, paragraph 40(g) explicitly states that the recoupment was to be "amortize[d] [for] the Cost of Construction at six percent (6%) per annum *over fifteen (15) years.*" (Emphasis added.) Thus, contrary to Jewel's assertions with regard to its recoupment rights, the 6% interest factor was taken into account in the formula as well as the time period in which it could recoup its construction costs. The contract language is plain that the 10.126% figure took into account the cost of construction plus the 6% interest factor per lease year based upon a 15-year term. There is nothing in paragraph 40(g) concerning an extension of time in which to recoup any monies beyond 15 years. Neither is there any mention of recoupment of any amount other than that specifically stated. It is unfortunate, as explained by the experts below, that construction costs escalated considerably between the time the lease was signed and the time of construction. However, the lease agreement speaks for itself. The trial court cannot rewrite paragraph 40(g) to protect Jewel from rising construction costs. In *Kerr Steam Co. v. Chicago Title & Trust Co.* (1983), 120 Ill. App. 3d 998, 458 N.E.2d 1009, this court followed the holding in one of our Federal decisions, agreeing that "[t]he fact that one party fails to provide a sufficient hedge against inflation is not a reason to construe a lease in a manner inconsistent with its clear language." (*Kerr,* 120 Ill. App. 3d at 1006.) Neither may the courts add a provision to an agreement to make it more equitable (*Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 459 N.E.2d 1164) or to suit the parties. *Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 451 N.E.2d 1292.

Accordingly, we hold that the circuit court erred in rewriting the lease under the guise of construction where the language of paragraph 40(g) is clear and definite on its face. (*Stein v. Spainhour* (1988), 167 Ill. App. 3d 555, 521 N.E.2d 641.) Such error requires reversal.

■ Defendants next argue that should this court find paragraph 40(g) to be ambiguous, it should review all of the extrinsic evidence, including the affidavit of Mr. Lincoln. Although we have already reached the conclusion that the trial court incorrectly held that paragraph 40(g) was ambiguous, we will briefly address the issue concerning extrinsic evidence. When the terms of an agreement are clear and unambiguous, they will be given their natural and ordinary meaning, and the intent of the parties must be determined from the language of the agreement alone. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d

585, 527 N.E.2d 897.) Thus, it was error for the trial court to mandate discovery and allow in extrinsic evidence regarding the intent of the parties. During her deposition, Ms. Riley mentioned the 6% interest factor; however, she was unclear whether it was included in the recoupment formula and "however that 10.126% factor "relate[d]." Mr. Galbraith stated that the recoupment arrangement was to be like a loan, *i.e.*, with a fixed payment amount, interest and term. In spite of the deposition testimony of Ms. Riley and Mr. Galbraith, we conclude that no genuine issue of material fact exists and that based upon the natural and ordinary meaning of the recoupment clause, defendants are entitled to summary judgment as a matter of law. Accordingly, the order of the trial court granting Jewel's cross-motion for summary judgment and denying defendants' motion for summary judgment is reversed.

Reversed.

BUCKLEY and O'CONNOR, JJ., concur.