LAKE COUNTY TRUST COMPANY, as Trustee, *et al.*, Plaintiffs-Appellees, v. TWO BAR B, INC., a/k/a Two-Bar-B Ranch, Inc., *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 1—91—0928

Opinion filed November 4, 1992.

TULLY, J., dissenting.

David Jaffe and Duane J. O'Connor, both of Kankakee, for appellants.

Michael D. Richman, of Dardick & Denlow, and Richard Kleinman, of Bernard Kleinman, Ltd., both of Chicago, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendant Two Bar B, Inc. (Two Bar B), appeals from an order entered on February 8, 1991, granting summary judgment to plaintiff Holland Farms, Inc. (Holland Farms), and awarding certain crop share proceeds to Holland Farms.

On appeal Two Bar B raises three issues: (1) the trial court erred in granting summary judgment to Holland Farms on February 8, 1991; (2) the trial court erred in denying Two Bar B's motion to strike an affidavit filed on behalf of Holland Farms; and (3) plaintiffs' failure to sign its motion for summary judgment renders the trial court's order void.

We affirm the summary judgment order in favor of Holland Farms because the assignment of rents upon which Two Bar B relied required the holder to be in possession of the realty before exercising rights under the assignment. The denial of Two Bar B's motion to strike an affidavit was appropriate where any defect in the instrument was cured by a supplemental affidavit later filed. We also find that Two Bar B failed to raise objections in a timely manner regarding the lack of a signature on plaintiffs' motion for summary judgment and thus waived this issue.

The basic controversy is whether Two Bar B or Holland Farms is entitled to money received in 1985 from the sale of certain farm crops. The underlying facts are not in dispute.

On June 13, 1983, plaintiff Lake County Trust Company (the Trust), as the buyer, executed a real estate contract with Two Bar B, as the seller, for the purchase of certain farmland in Jasper County, Indiana. On July 6, 1983, three documents were executed by the Trust relating to this purchase: (1) an installment note; (2) a purchase money mortgage (Trust Deed) to secure payment of the installment note; and (3) an assignment of rents.

The installment note provided that "the sole remedy of the holder hereof shall be by foreclosure of the said trust deed given to secure the indebtedness evidenced by this note, in accordance with the terms and provisions in said trust deed." The installment note also makes reference to "the assignment of rentals."

The assignment of rents states that it further secures the installment note ("on order to further secure said indebtedness and a part of consideration of said transaction") and also that it was intended "to establish an absolute transfer and assignment." The assignment of rents further allows the assignee to have the power to use the rentals to apply to any present or future liability exercisable only after default in the payment of the mortgage, although it does not particularize the mechanics of the exercise of such power granted.

The mortgage was held by defendant City National Bank of Kankakee (the Bank), which was acting as the agent of Two Bar B.

Holland Farms is the sole beneficiary of the Trust. On September 28, 1983, Holland Farms entered into a crop share lease with the Koebcke brothers (Ronald, James, and Douglas Koebcke) involving farmland which was included in the Jasper County farmland purchased by the Trust. Under the lease, the Trust delegated its right to Holland Farms to act as the farm's manager. As the manager, Holland Farms rented the land to the Koebcke brothers on a 50/50 crop share basis, meaning that the Koebcke brothers agreed to pay Holland Farms as annual rent 50% of the crop proceeds from the sale of farm crops.

On September 16, 1985, the Bank sent a notice to the Trust stating that the installment note was in default.

In October 1985, several checks totaling about $67,000 were made payable to the order of "Jasper Farms c/o Lake Co. Trust Co. & City National Bank of Kankakee." "Jasper Farms" is the assumed business name of Holland Farms. These checks, issued by Cargill, Inc. (Cargill), represented a 50% share of the farm crops which had already been har-

vested and sold. It is these proceeds which are the subject of this litigation.

On December 2, 1985, since the Cargill checks were made payable to two parties, the Trust and Holland Farms filed an interpleader and declaratory judgment action in Illinois to claim their right to the funds. Thereafter, Two Bar B filed a first amended counterclaim seeking entitlement to the same funds.

On January 14, 1986, while the Illinois declaratory judgment action was still pending, Two Bar B filed a mortgage foreclosure action in Indiana against both the Trust and Holland Farms seeking to foreclose the mortgage on the property to which the Holland Farms-Koebcke brothers' lease related and to collect the same monies (Cargill checks) based on the assignment of rents. In this Indiana mortgage foreclosure action, Two Bar B sought and obtained, on March 10, 1986, a court-appointed receiver to farm and manage the farmland in Jasper County.

In 1987, the trial court in the Illinois declaratory judgment action, granted the Trust and Holland Farms' motion to dismiss Two Bar B's amended counterclaim.

On appeal from this 1987 order, this court in *Lake County Trust Co. v. Two Bar B, Inc.* (1989), 182 Ill. App. 3d 186, 537 N.E.2d 1015, found, among other things, that the language of two documents (the installment note and assignment of rents) was ambiguous, reversed the order granting the motion to dismiss Two Bar B's amended counterclaim, and remanded the case to allow the parties to present extrinsic evidence regarding their intent as to the remedy provisions in the instruments.

Upon remand, the parties filed cross-motions for summary judgment. On December 4, 1990, following a hearing, the trial court denied Two Bar B's motion to strike an affidavit filed by Holland Farms and also granted summary judgment in favor of Two Bar B. Holland Farms then moved for reconsideration of the trial court's December 4, 1990, order.

On February 8, 1991, at a hearing on Holland Farms' motion for reconsideration, the trial court vacated its December 4 order in favor of Two Bar B and entered summary judgment for Holland Farms. In short, the trial court found the assignment of rents was simply additional security for the trust deed and installment note which it secured and that all three instruments must be construed together. Moreover, the assignment of rents could not be considered as a separate instrument. Two Bar B's right under the note and mortgage were that of a mortgagee and as such mortgagee, Two Bar B had no entitlement to the proceeds or the sale of crops until it actually took possession of the subject real estate. Thus, the trial court found that Holland Farms was enti-

tled to the crop proceeds because the money had been tendered (October 1985) months before Two Bar B took possession (March 1986).

Initially, we note, contrary to Holland Farms' assertion that the applicable standard of review is abuse of discretion, the *de novo* standard of review must be applied in reviewing summary judgments. *Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083.

Simply stated, the parties disagree as to the nature of the assignment of rents instrument and the effect of the exercise of powers seemingly granted by the terms of that instrument.

Two Bar B characterizes the assignment of rents as a collateral, free-standing instrument that created rights separate from the rights reserved to the holder of the mortgage. With this understanding, Two Bar B maintains that the common law of assignments and the statutory law for security interests under article 9 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 9—101 *et seq.*) apply and that Two Bar B's rights under the assignment of rents vested at the time the default occurred.

Holland Farms maintains that the assignment of rents was not independent of the mortgage and the installment note but rather was only additional security for the indebtedness in the event of a default and thus primarily asserts that the law applicable to mortgages controls. Applying the principles of mortgage law, Holland Farms argues that Two Bar B must take actual possession or obtain a court-appointed receiver to assert the power under the assignment of rents and that notice of demand alone was not sufficient.

When this court first considered this case, we noted that parties to a contract are free to limit their rights, duties and obligations by express agreement. (*Lake County Trust*, 182 Ill. App. 3d at 192.) However, we found that the agreement between the parties, consisting of the installment note and the assignment of rents, was ambiguous due to the apparent conflict between the exclusive remedy language in the installment note and the language allowing for a remedy under an assignment of rents. Accordingly, we remanded to allow the trial court to consider extrinsic evidence regarding this issue. *Lake County Trust*, 182 Ill. App. 3d at 193.

As a preliminary matter, we consider *sua sponte* the applicability of Illinois law to the present case.

"[A] conflict of laws problem is presented whenever a legal controversy arises in which there is a foreign element." (11 Ill. L. & Prac. *Conflict of Laws* §2, at 117 (1981).) In the present case, the controversy stems from the crops grown and harvested on the farmland in Indiana

and the construction to be given certain security instruments executed in connection with the sale and financing of Indiana real estate.

Illinois courts rely on the principles enunciated in the Restatement (Second) of Conflict of Laws in resolving conflict-of-law questions. *In re Marriage of Adams* (1990), 133 Ill. 2d 437, 446, 551 N.E.2d 635; *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.* (1990), 209 Ill. App. 3d 144, 152, 568 N.E.2d 9.

The Restatement (Second) of Conflict of Laws regarding property provides that "it is a firmly established principle that questions involving interests in immovables are governed by the law of the situs." (Restatement (Second) of Conflict of Laws §222, Introductory Note (1971).) The Restatement (Second) explains that the "term 'immovables' *** refers to land and to things that are so attached, or otherwise related, to the land as legally to be regarded a part of it." Restatement (Second) of Conflict of Laws §222, Introductory Note (1971).

This principle is consonant with the traditional legal doctrine that the law of the State where the real estate is situated governs the rights of the parties. *Dibble v. Winter* (1910), 247 Ill. 243, 252, 93 N.E. 145; *Smith v. Smith* (1898), 174 Ill. 52, 58, 50 N.E. 1083.

The subject matter of the documents at issue was the farmland in Indiana and accordingly, we find that Indiana law controls.

■ In Indiana, and Illinois, "[i]t is commonly accepted that where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, a mortgage may be modified by other instruments and all the documents are to be read together to determine and give effect to the intention of the parties."[1] (*Merchants National Bank & Trust Co. v. H.L.C. Enterprises, Inc.* (Ind. App. 1982), 441 N.E.2d 509; accord *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80, 454 N.E.2d 676; 59 C.J.S. *Mortgages* §156, at 208 (1949).) The general rules employed to construe contracts are applicable to the construction of a mortgage. See *Gilbert v. Lusk* (1952), 123 Ind. App. 167, 106 N.E.2d 404.

The purpose of the subject instruments was to allow the Trust to buy the land from Two Bar B. To effectuate this purchase, the Trust and

---

[1]At least one Illinois court has held that conflict-of-law rules are resorted to only when a difference in the law would be determinative of the outcome of the litigation. (*The Hartford v. Burns International Security Services, Inc.* (1988), 172 Ill. App. 3d 184, 526 N.E.2d 463.) Where the circuit court determined its decision under the inappropriate law, reversal and remandment for further proceedings is proper when the law that was applied and the law that should have been applied are different. *Adams*, 133 Ill. 2d 437, 551 N.E.2d 635.

Two Bar B, among other defendants, contemporaneously executed three documents: (1) the installment note; (2) the purchase money mortgage (trust deed); and (3) an assignment of rents. Thus, in the present case, since all three instruments were executed for the same transaction, they are thereby interdependent and should be read together.

The express language of the assignment of rents provides two seemingly inconsistent intentions: (1) that it was intended only as additional security to assure repayment of the installment note ("in order to further secure said indebtedness, and as a part of the consideration of said transaction"); and (2) that it was intended "to establish an absolute transfer and assignment." The assignment of rents did not contain a remedy provision but rather provided that upon default, the payee (Two Bar B) could exercise its rights. In the absence of a remedy provision in the assignment of rents and in light of the ambiguity found in the installment note, we would reasonably look to the mortgage instrument which in the instant case contains a standard "rents and profits" clause.[2]

Absent a contrary provision in the mortgage, the mortgagor is entitled to the rents, profits and crops of the mortgaged property as long as he lawfully remains in possession of the premises. *White v.*

---

[2]Without a single citation, the dissent declares that the assignment of rents is secured by growing crops under article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 9—101 *et seq.*) although a recent Illinois case has clearly decided this issue to the contrary. In *Anna National Bank v. Prater* (1987), 154 Ill. App. 3d 6, 17, 506 N.E.2d 769, the court stated:

"A consideration of the nature of a mortgagee's right to crops as rents and profits of mortgaged property under Illinois law leads us to conclude that this right constitutes, not a personal property interest subject to the UCC, but an interest that derives from and is incident to the mortgagee's right to the real estate and that is thus governed by non-UCC law. Under well-established Illinois law, a clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits of the land, which may be enforced by the mortgagee upon default *by taking possession of the mortgaged property.* [(Emphasis added.)] [Citations.] *** Until the mortgagee takes possession, however, the mortgagor is entitled to the growing crops, and if the crops are severed from the land prior to the mortgagee's taking possession, the mortgagor has an absolute right to them without liability to account to the mortgagee. [Citations.] *** Because, under Illinois law, a 'rents and profits' clause in a real estate mortgage conveys no separate right to the crops growing on the land, as would a chattel mortgage or article 9 security agreement, and because the real estate mortgagee's right to such rents and profits arises only as an incident of foreclosure of the real estate involved, we find that such a clause does not create a security interest in personal property so as to be subject to the provisions of the UCC."

*Redenbaugh* (1907), 41 Ind. App. 580, 82 N.E. 110; *Favorite v. Deardorff* (1882), 84 Ind. 555; accord *Anna National Bank v. Prater* (1987), 154 Ill. App. 3d 6, 17, 506 N.E.2d 769 ("[u]ntil the mortgagee takes possession *** the mortgagor is entitled to the growing crops, and if the crops are severed from the land prior to the mortgagee's taking possession, the mortgagor has an absolute right to them without liability to account to the mortgagee").

■ In the present case, there is no dispute that the crops were harvested and sold prior to the initiation of a mortgage foreclosure action by Two Bar B and the appointment of receiver by a court. Accordingly, under the circumstances of this case, upon default, the initial remedy lies in the land, *i.e.*, foreclosure.

To support its position that the law of assignments, not mortgages, applies, Two Bar B submits that the only relevant case is *De Kalb Bank v. Purdy* (1988), 166 Ill. App. 3d 709, 520 N.E.2d 957, and yet acknowledges that the *De Kalb Bank* case involves a "classic mortgage/trust deed instrument which included a standard assignment of rents provision."

Since Illinois law is consistent with Indiana law in this matter, the *De Kalb Bank* case can be considered but we find that it is distinguishable. Unlike Two Bar B in the present case, when the mortgagors defaulted on their debt in *De Kalb Bank*, the mortgagee bank procured an injunction which restrained the mortgagors from disposing of any future rents that would be generated from a corn crop which had not yet been harvested or sold. However, the *De Kalb Bank* court noted that the mortgagee was not entitled to rent payments which had been paid to the mortgagors before the injunction order was entered. The court reasoned that, consistent with the principles of mortgage law, the injunction served to accomplish the same objective as the appointment of a receiver, *i.e.*, placing the disputed funds

---

One can hardly imagine a clearer and more definitive statement. The dissent weakly attempts to distinguish *Anna*. It simply ignores *Anna* and other Illinois cases that have set out the requirements of a security agreement and the determination that a UCC security interest cannot exist in the absence of such a security agreement. *Allis-Chalmers Corp. v. Staggs* (1983), 117 Ill. App. 3d 428, 432, 453 N.E.2d 145.

In voicing its concern over a "rents and profits" or "growing crops" litigation explosion, the dissent chooses to ignore our observation that an assignment of rents could have been drafted with an appropriate remedy provision to allow more direct action and further ignores the fact that although a proper security agreement encumbering growing crops could have been fashioned under the provisions of article 9 of the UCC, the parties failed to avail themselves of that opportunity in the instant case.

in the court's custody pending a final determination of the parties' rights to the rents and profits. *De Kalb Bank*, 166 Ill. App. 3d at 716-17.

In contrast, Two Bar B in the present case took no court action to secure the crop proceeds at issue before the crops were harvested and sold in October 1985. Instead, the first time Two Bar B claimed a right to the proceeds was in a counterclaim filed in response to the declaratory judgment action filed by the Trust and Holland Farms in December 1985. Thereafter, Two Bar B filed a mortgage foreclosure action in January 1986. In accordance with the findings in *De Kalb Bank*, Two Bar B would not be entitled to past rents and profits, but only future proceeds.

Two Bar B also argues that the assignment of rents is enforceable under article 9 (secured transactions) of the Uniform Commercial Code. Ill. Rev. Stat. 1989, ch. 26, par. 9—101 *et seq.*

Two Bar B never raised this argument in either its motion for summary judgment, its objection to the motion for reconsideration filed by the Trust and Holland Farms, or in the hearing on the motion for reconsideration. Accordingly, we find that Two Bar B has waived this argument since an appellate court will not consider on review theories which were not presented to the trial court. *Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831; *Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 494, 483 N.E.2d 297.[3]

Two Bar B next contends that the trial court erred in denying its motion to strike an affidavit by Bernard Kleinman on behalf of Holland Farms which was filed with the Trust and Holland Farms' motion for summary judgment on October 19, 1990.

As a threshold question, the Trust and Holland Farms contend that this court lacks jurisdiction to address the December 4, 1990, order because jurisdiction in this appeal is based on the trial court's Supreme Court Rule 304(a) finding from the February 8, 1991, order only. 107 Ill. 2d R. 304(a).

---

[3]Even assuming the UCC argument had not been waived, it is doubtful that the UCC applies in the present case because by its own terms, the UCC does not apply "to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder." Ill. Rev. Stat. 1989, ch. 26, par. 9—104(j); see also *Anna National Bank*, 154 Ill. App. 3d at 17(a "rents and profits" clause in a mortgage does not create a security interest in personal property for purposes of the UCC); *Allis-Chalmers Corp. v. Staggs* (1983), 117 Ill. App. 3d 428, 432, 453 N.E.2d 145 (a security interest cannot exist in the absence of a security agreement).

The trial court's order entered on March 5, 1991, granted the motion of the Trust and Holland Farms for the entry of a Rule 304(a) finding and specifically stated that "Pursuant to Supreme Court Rule 304(a), this Court finds no just reason to delay enforcement of or appeal from the Order entered by this Court on February 8, 1991." This order also referred to the motion of reconsideration and the vacation of the order of December 4, 1990.

█ The Trust and Holland Farms also assert that only the February 8, 1991, order is properly before this court on appeal because Two Bar B never identified the December 4, 1990, order in its notice of appeal as required by Supreme Court Rule 303(c)(2). 107 Ill. 2d R. 303(c)(2).

Two Bar B's notice of appeal clearly identified the February 8, 1991, order and then stated that it "further Appeal[s] from the Court's denial of Defendant-Appellant's Motion to Strike Plaintiff-Appellee's Affidavit of Bernard Kleinman in Support for Summary Judgment, dated October 17, 1990."

A notice of appeal is to be liberally construed and considered as a whole. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 433, 394 N.E.2d 380; *Jewel Cos. v. Serfecz* (1991), 220 Ill. App. 3d 543, 547, 581 N.E.2d 186.) The appellate court is not deprived of jurisdiction where a deficiency is one of form only, not substance. (*Burtell*, 76 Ill. 2d at 434; *Jewel Cos.*, 220 Ill. App. 3d at 547.) The purpose of the notice of appeal is to advise the prevailing party of the nature of the appeal and the briefs, not the notice of appeal itself, specify the precise points to be relied upon for reversal. *Burtell*, 76 Ill. 2d at 433-34; *Korogluyan v. Chicago Title & Trust Co.* (1991), 213 Ill. App. 3d 622, 572 N.E.2d 1154; *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 480 N.E.2d 1312.

We find that Two Bar B's notice of appeal was sufficient to confer appellate jurisdiction to review the trial court's denial of its motion to strike the Kleinman affidavit as this finding was made in the same order (December 4, 1990) which was the subject of the Trust and Holland Farms' motion for reconsideration. Moreover, even though the notice of appeal did not expressly provide the date of the December 4, 1990, order, the matter was adequately conveyed to inform opposing parties of the nature of the appeal.

We now consider the merits of the trial court's order which denied Two Bar B's motion to strike the Kleinman affidavit.

The granting of a motion to strike is within the sound discretion of the trial court. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 422, 430 N.E.2d 976.) The sufficiency of an affidavit in support of a

motion for summary judgment is governed by Supreme Court Rule 191 (107 Ill. 2d R. 191). Rule 191 is satisfied "if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents." *Allied American Insurance Co. v. Mickiewicz* (1984), 124 Ill. App. 3d 705, 708, 464 N.E.2d 1112, quoting *Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 576, 442 N.E.2d 648; see also *Purtill v. Hess* (1986), 111 Ill. 2d 229, 241, 489 N.E.2d 867.

■ In the present case, the original affidavit by Bernard Kleinman, the sole surviving officer of Holland Farms, was filed with the Trust and Holland Farms' motion for summary judgment on October 19, 1990. On November 26, 1990, Two Bar B filed its motion to strike the Kleinman affidavit, alleging certain deficiencies under Rule 191. On the same day (November 26, 1990), a supplemental affidavit was filed by Mr. Kleinman in response to Two Bar B's motion to strike. Two Bar B never moved to strike Kleinman's supplemental affidavit.

From our review of the record, we find that the contents of the original Kleinman affidavit sufficiently satisfied the requirements of Rule 191. Moreover, to the extent, if any, that the original affidavit was lacking, we believe the supplemental affidavit filed by Mr. Kleinman remedied the alleged deficiencies. Thus, we find that the trial court did not err in denying Two Bar B's motion to strike the Kleinman affidavit.

■ Two Bar B next claims that the absence of a signature on the motion for summary judgment filed by the Trust and Holland Farms on October 19, 1990, renders the trial court's February 8, 1991, order void. However, until the instant appeal, Two Bar B never contested the validity of the form or requisites of the summary judgment motion, but rather responded, without objection, to that motion and all subsequent pleadings. Two Bar B raises this issue for the first time on appeal. Accordingly, we find that Two Bar B has waived this issue.

For all the reasons stated, we affirm the trial court's order granting summary judgment in favor of the Trust and Holland Farms.

Judgment affirmed.

CERDA, J., concurs.

JUSTICE TULLY, dissenting:
I must respectfully dissent from the majority's opinion as I believe the assignment of rents involved in this case is enforceable under arti-

cle 9 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 9—101 *et seq.*; Ind. Code Ann. §26—1—9—101 *et seq.* (West 1980)). Accordingly, I would reverse the trial court's order of February 8, 1991, granting summary judgment in favor of Holland Farms.

As the majority points out, Two Bar B failed to present to the trial court the issue of the applicability of article 9 of the UCC to this case; nevertheless, this court has the power to consider this argument and is not limited by the proceedings at the trial court level. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 230 N.E.2d 831; *In re Application of the County Treasurer* (1975), 25 Ill. App. 3d 717, 323 N.E.2d 803.) I believe in order to effectuate an equitable and just resolution of this case we must examine this argument.

Section 9—102 of the UCC makes the UCC applicable to any business transaction which is intended to create a security interest in personal property, including crops. (Ill. Rev. Stat. 1989, ch. 26, par. 9—102; Ind. Code Ann. §26—1—9—102 (West 1980).) An assignment of rents is not excluded under section 9—104 of the UCC and, thus, an assignment of rents is covered by provisions of article 9. (Ill. Rev. Stat. 1989, ch. 26, par. 9—104; Ind. Code Ann. §26—1—9—104 (West 1980).) Therefore, in the present case, the assignment of rents would clearly fall within the ambit of article 9.

Section 9—503 of the UCC (Ill. Rev. Stat. 1989, ch. 26, par. 9—503; Ind. Code Ann. §26—1—9—503 (West 1980)) states that unless there is an exclusionary clause within a security agreement, a secured party, upon default, can take possession of the collateral, *i.e.*, in this case, the monies received from the sale of the crops to Cargill, Inc., without judicial process.

The majority believes that the case of *Anna National Bank v. Prater*, 154 Ill. App. 3d 6, 506 N.E.2d 769, is dispositive of this issue. However, I believe *Anna* is distinguishable from the case *sub judice* and, in fact, suggests a resolution inapposite of that contained in the majority's opinion. *Anna* dealt only with a "rents and profits" clause under a mortgage document, not a transaction involving a separate chattel mortgage as in the case here. The quote given by the majority in footnote 2 of its opinion unfortunately truncates the following from the *Anna* opinion:

> "There is no question that growing crops may be the subject of an article 9 security interest before they have been severed from the land. Indeed, ANB, the mortgagee here, *could have chosen* to secure its loan to the [mortgagors] with an article 9 security interest on crops 'growing or to be grown' on the

mortgaged property in addition to a mortgage on the real estate itself. Since ANB had no such security interest, ANB could claim the crops on the mortgaged premises only by foreclosing on its real estate mortgages and taking possession of the property before the crops were severed from the real estate. Thus, ANB's interest in the crops was not an article 9 security interest and should not be so considered." (Emphasis added.) *Anna*, 154 Ill. App. 3d at 18.

Thus, *Anna* quite correctly concludes that a mortgagee can choose to secure its loan with a collateral article 9 security interest on crops growing or to be grown on the mortgaged property, in addition to a mortgage instrument on the land itself.

It is my belief that the majority's decision creates an additional burden upon secured creditors to file a lawsuit in the event of a relatively minor default, rather than simply executing on the assignment of rents: a ridiculous concept to behold. This holding creates yet another legal hurdle for individuals to surmount in a society already overburdened by litigation.

Consequently, the judgment of the circuit court of Cook County should be reversed.