EARNEST A. JEANBLANC *et al.*, Plaintiffs and Counterdefendants-Appellees, v. WILLIAM A. SWEET *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District    Nos. 2—92—1294, 2—92—1295 cons.

Opinion filed April 6, 1994.

Robert T. Hanson, of Moehle, Smith & Nieman, P.C., of Mt. Morris, for appellants.

Alan W. Cargerman, of Fearer, Nye, Ahlberg & Chadwick, of Oregon, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Earnest and Dorothy Jeanblanc (collectively referred to as Jeanblancs), brought separate actions for ejectment and damages in the circuit court of Ogle County against (1) defendants Willis and Lola Brantner, individually and as cotrustees under a private trust agreement dated March 26, 1991, known as the Brantner Private Trust Agreement, and the Brantner Private Trust Agreement (collectively referred to as the Brantners); and (2) defendants William and Mary Sweet (collectively referred to as the Sweets). Plaintiffs and defendants filed cross-motions for summary judgment, pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)), on the issue of the ownership of the lands in question. The trial court determined that plaintiffs owned the lands in question in fee and were not barred from asserting their ownership interest under the limitations provision of section 13—114 of the Code of Civil Procedure (735 ILCS 5/13—114 (West 1992)). The trial court entered partial summary judgment in favor of plaintiffs and against defendants, reserving only the issue of damages. The trial court made a specific finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

Defendants filed separate, timely appeals in this matter from the trial court's order of partial summary judgment. The sole issue raised is whether a genuine issue of material fact remained regarding the right, title, and interest of the parties in the subject lands.

This case arises from the acquisition and subsequent sale of lands by the Illinois Central Railroad. In 1850, the Federal government granted the State of Illinois, among others, a 200-foot-wide right-of-way through unopened Federal lands for the purpose of constructing a railroad line. (9 Stat. 466 (1850) (hereinafter the Act of 1850 or Act).) The same Act also granted Federal rights in certain public lands adjacent to the land grant railroad right-of-way which were to be sold by the State of Illinois to finance construction of the new railroad. (9 Stat. 466 (1850).) In 1851, the State of Illinois incorporated the Illinois Central Railroad Company (Illinois Central) to lay out and construct a railroad under the Federal land grant of 1850. (17th Ill. Gen. Assem., 1st Sess. Private Laws, at 61 (1851).) Illinois Central was given the power to select and sell adjacent sections of land to finance the new railroad, and the State of Illinois authorized the governor to deed such right-of-way and adjacent lands to Illinois Central. (17th Ill. Gen. Assem., 1st Sess. Private Laws, at 61 (1851).) The governor of Illinois subsequently deeded the aforementioned right-of-way and power to select and sell adjacent lands to Illinois Central. The subject lands in the present dispute were among those mentioned in these Acts and instruments.

On April 18, 1855, a 200-foot-wide right-of-way running north and south through section 4 of Buffalo Township, Ogle County, Illinois, was quitclaimed to Illinois Central. This section of the right-of-way contains the lands under dispute in the present case. Illinois Central operated a railroad along this right-of-way from April 1855 until approximately 1983.

On September 21, 1855, Illinois Central executed a warranty deed which conveyed to Zenas Aplington "the North Fractional Half of Section Four (4) Township Twenty Three (23) North Range Eight (8) East of the Fourth (4th) principal meridian containing, according to Government Survey, 702.56 acres. Reserving and excepting from the conveyance hereby made a strip or tract of land running through the parcel hereby conveyed 200 feet in width of which the center line is the center line of the track of the Illinois Central Rail Road as the same is now laid out or constructed and extended for width 100 feet distant each way from said center line of said Rail Road track."

The parcel purchased by Zenas Aplington was later divided among various parties. In 1971, the Sweets acquired an approximately 150-acre section of the "Aplington" property located in the northwest

corner of section 4. The warranty deed they received purported to convey a parcel of land running West from Illinois Central's railroad "EXCEPT a strip of land 100 feet wide across the East end of said land for said railroad right of way." In 1976, the Brantners acquired an approximately 114-acre section and an approximately 10-acre section of the "Aplington" property, both of which were to the south of the Sweets' property. The warranty deed they received purported to convey a parcel of land running West from Illinois Central's Railroad, and it stated that "[t]his conveyance is subject to *** the right of way of Illinois Central Railroad."

In 1986, Illinois Central quitclaimed to plaintiffs "[a]ll of the East 50' in equal width of the original 200' wide right-of-way *** extending southerly across the E/2 Fractional Section 4, T. 23 N., R. 8 E., Fourth P.M., Ogle County, Illinois, a distance of approximately 4318.38' as measured along the East line of said 50' strip, from the South line of the North 218.79' of said E/2 Section 4, to the South line of the North 4537.17' said E/2 Section 4." In 1990, Illinois Central quitclaimed to plaintiff Dorothy Jeanblanc, individually, a section of land described as "T. 23 N. R. 8 E., Fractional Section 4—All of Grantor's original 200' wide right of way, extending southerly across the N 3/4 of the W 1/2 E 1/2 to the South line of said N 3/4; LESS AND EXCEPT from the last described parcel that 50' x 4318.38' strip conveyed to [plaintiffs] by deed dated April 21, 1986."

Plaintiffs filed the present actions against defendants for ejectment pursuant to section 6—101 *et seq.* of the Code of Civil Procedure (735 ILCS 5/6—101 *et seq.* (West 1992)) from the above-described portions of the former right-of-way. Plaintiffs sought an adjudication of the title and interests of the parties and damages. The Brantners counterclaimed to quiet title and recover damages. Plaintiffs then filed a motion seeking partial summary judgment adjudicating, for all purposes of the litigation, that, since June 1, 1990, they owned the subject lands in fee. The Brantners filed a cross-motion for summary judgment asserting that there was no genuine issue of material fact and seeking an adjudication in their favor on the issues of ownership and liability with respect to their portion of the subject lands. The Sweets asserted that there were genuine issues of material fact as to their claim to ownership in their portion of the subject lands and as to the nature and extent of Illinois Central's title or interest in same at the time of the conveyances to plaintiff.

The trial court ruled that there was no genuine issue of fact as to whether Illinois Central received the subject lands in fee simple and that the parties' rights regarding those lands rested upon the

construction of the deeds and the nature of the estates conveyed. Also, the trial court determined that the language used in the conveyances after 1856 did not limit the fee simple estate held by Illinois Central and granted summary judgment in favor of plaintiffs and against defendants regarding all issues of ownership of the subject lands and liability.

On appeal, defendants argue that an issue of material fact remained regarding the rights, title, and interests of the parties in the subject lands. Defendants assert, relying upon *City of Maroa v. Illinois Central R.R.* (1992), 229 Ill. App. 3d 503, and several related decisions, that Illinois Central's interest in the 200-foot strip, as granted by the Act of 1850, was only a limited fee subject to an implied condition of reverter if the right-of-way ceased to be used or retained for the purpose for which it was granted. They further argue that because Illinois Central did not hold the land in fee simple, it could not have conveyed such an ownership interest to plaintiffs. Plaintiffs respond that this argument was waived because of defendants' failure to raise the issue in the trial court.

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992); *Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 517-18; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102; *John Alden Life Insurance Co. v. Propp* (1994), 255 Ill. App. 3d 1005, 1008; *Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 598.) Summary judgment should be granted only where the right of the moving party is clear and free from doubt. (*Outboard Marine*, 154 Ill. 2d at 102; *Alden Life Insurance*, 255 Ill. App. 3d at 1008; *Olympic Restaurant*, 251 Ill. App. 3d at 598.) While the nonmoving party in a summary judgment motion is not required to prove his case, he must nonetheless present a factual basis which would arguably entitle him to a judgment. (*Alden Life Insurance*, 255 Ill. App. 3d at 1009.) An appeal from the grant of summary judgment is subject to *de novo* review. *Outboard Marine*, 154 Ill. 2d at 102; *Olympic Restaurant*, 251 Ill. App. 3d at 598.

The record reveals that defendants raised several challenges to plaintiffs' summary judgment motion. First, all defendants urged that plaintiffs' claims on the land were barred under the limitations provisions of section 13—114. This matter was not pursued by defendants on appeal. The Brantners' counsel further argued that the railroad held the lands in fee simple as well as the right-of-way

to those lands pursuant to the 1850 conveyance, the railroad had sold the land in fee to Aplington while reserving the right-of-way, and the railroad abandoned the right-of-way before executing the quitclaim deeds.

The Sweets' counsel urged the court to consider the language of the Act of 1850, and he argued that it did two things: (1) established a right-of-way going across the subject property, *i.e.*, "a right-of-way to allow railroads to run across it, not a grant of land"; and (2) granted property which was adjacent to the railroad itself, and not merely the right-of-way, to be sold to finance the railroad. The Sweets' counsel further argued that the granted lands had to be sold with a reserved right-of-way and that this reserved "right-of-way" was synonymous to an easement through the subject lands, and, therefore, concluded that Illinois Central had sold the subject lands, reserving only an easement through them, and did not own them in fee when the quitclaim was made to plaintiffs.

A reviewing court will not consider on review issues and arguments which were not presented to or considered by the trial court. (*Lake County Trust Co. v. Two Bar B, Inc.* (1992), 238 Ill. App. 3d 589, 598; *Lane v. Titchenel* (1990), 204 Ill. App. 3d 1049, 1052.) Thus, issues raised for the first time on appeal, even from a summary judgment order, are deemed waived. See *Lake County Trust*, 238 Ill. App. 3d at 598; *Lane*, 204 Ill. App. 3d at 1052.

■ Several important aspects of the arguments defendants raised in the trial court are distinct from those in the arguments which they raise on appeal. The primary thrust of defendants' appellate challenge to the summary judgment order argues that the Act of 1850 did not convey a fee interest to the Illinois Central. Defendants argue that plaintiffs' ownership rights trace back to the Act of 1850, which has been determined to grant only a limited fee subject to an implied condition of reverter, and therefore plaintiffs cannot hold the property in fee simple. This argument is primarily one of statutory construction which we find was not presented to the trial court. Although the language of the land grant was referred to below, it was done only in the context of interpreting Illinois Central's conveyance to Aplington. All defendants urged the trial court to conclude that Illinois Central had held the disputed lands in fee simple and had conveyed its interest to Aplington, subject to a right-of-way, and that there had been no fee interest left to convey to plaintiffs. Defendants' appellate contentions regarding the construction of the Act of 1850 have, therefore, been waived.

Defendants also tangentially argue that because Illinois Central held only a limited fee, it lost all rights in the property upon

abandonment. The Brantners raised no such claim in the trial court. Although the Sweets did discuss abandonment at the summary judgment motion hearing, they did so only to the extent that they claimed ownership of the land in fee subject to a *de facto* easement which had been arguably abandoned by Illinois Central. This contention is markedly different from their appellate argument. We determine, therefore, that all defendants have waived any claim of abandonment relative to the subject property.

■ The trial court's grant of summary judgment was based upon its interpretation of Illinois Central's deed to Aplington. It assumed the fact, which was undisputed at the time, that Illinois Central had held the subject lands in fee simple prior to this conveyance. The trial court found that the deed to Aplington did not convey any interest in the disputed lands. Rather, it specifically excluded them. Although some of the subsequent deeds purported to convey this strip, subject to a railroad right-of-way, the trial court concluded that no such interest had ever been transferred to Aplington. The trial court found, therefore, that defendants had no claim in the subject lands.

Having reviewed the record, specifically the deed in question, we agree with the trial court's conclusion that no interest whatsoever in the subject lands was conveyed to Aplington. The relevant language in this regard is clear and unambiguous; it specifically excluded the 200-foot strip of land in question. We determine, therefore, that the trial court properly granted partial summary judgment based upon the arguments made and the record before it.

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.