MARGARET J. FINK, Plaintiff-Appellee, *v.* EDWIN A. ROLLER, Defendant-Appellant.

Fifth District No. 81—600

Opinion filed March 28, 1983.

Christopher B. Hunter, of Farrell, Heil, Long & St. Peters, P.C., of Godfrey, for appellant.

Linda L. Zazove and Steven N. Mottaz, both of Thomas, Mottaz & Eastman, of Alton, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On October 25, 1977, plaintiff filed her petition in the circuit court of Madison County for modification of child support payments arising out of a paternity action. Plaintiff appealed that court's dismissal of her petition, and this court reversed and remanded. (*Fink v. Roller* (1979), 76 Ill. App. 3d 818, 395 N.E.2d 617.) On remand, the circuit court on October 21, 1981, modified defendant's monthly child support obligation from $75 to $150, retroactive to October 25, 1977, and assessed defendant's responsibility for plaintiff's attorney fees in the action at $2,325. In this appeal, defendant argues that (1) plaintiff did not demonstrate the "substantial change in circumstances" necessary to support a child support modification; (2) the court erred in ordering such modification to be retroactive to the date of plaintiff's modification petition; and (3) the court erred in awarding plaintiff attorney fees with respect to the modification proceedings.

The child in question was born in 1966. By stipulation filed in the trial court on November 8, 1967, defendant agreed to pay plaintiff $75 per month for the child's support.

Defendant testified at the May 20, 1981, hearing on remand: He was manager of a 300-acre grain farm and part-time real estate appraiser and he was in the same business in 1967. He held title to the grain farm from 1956 until 1980, when he conveyed it to a land trust. A tenant farmed the grain acreage under a "standard arrangement" pursuant to which defendant received half the crop annually. Defend-

ant had two adopted children; one, age 20, was in the Navy, and the other, age 18, attended Washington University. Defendant received $400 a year for a road easement used for access to a landfill adjoining his farm. He received $4,265.16 in 1980 and $2,675 in 1979 for sale of other easements. He rented a vacant lot in Alton to an automobile dealer for $350 per month. In 1978 he sold certain real estate he owned outright for $32,500 on a contract for deed basis and had received all but $11,700 of that amount. Prior to 1961, he had operated a hamburger stand there but closed it due to poor health. He owned the grain farm, his house, and his 1980 Cadillac outright. He also owned a 1970 pickup truck with camper and a 16-foot boat. His savings account was under $2,000. He owned stock including General Motors (300 shares), Occidental Petroleum (300), American Telephone and Telegraph (100), A.A.R. Corporation (213), and Utah Power and Light (100). Defendant did not itemize deductions in his income tax returns. His total adjusted gross income was as follows: in 1980, $35,707.84; in 1979, $31,429.57; in 1978, $29,672.86; and in 1977, $29,189.99.

Plaintiff testified at the hearing on remand that her gross income as a secretary for 1980 was nearly $17,000, up $2,000 from 1979; her sole significant asset was her home, in which she had equity of about $18,700; she was receiving $900 a year from defendant as child support; and the child in question was in ninth grade and had been fitted with dental braces in 1979 at a cost of $1,650.

First, defendant argues that plaintiff failed to establish a substantial change of the parties' circumstances necessary to sustain an increase in defendant's child support obligation. In this regard, modification of child support obligations under the Illinois Marriage and Dissolution of Marriage Act is permitted only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1981, ch. 40, par. 510(a); *Nordstrom v. Nordstrom* (1976), 36 Ill. App. 3d 181, 184, 343 N.E.2d 640, 642-43.) Section 9 of the Paternity Act states that the trial court retains jurisdiction to modify child support. It also provides that in determining the father's support obligation, the court shall consider not only the father's financial condition and circumstances but also the income and resources of the mother. Although section 9 does not purport to set forth a standard to be used in determining requests for modifications of child support (Ill. Rev. Stat. 1981, ch. 40, par. 1359), section 9 has been construed as requiring the same showing for a support modification as is required under the Illinois Marriage and Dissolution of Marriage Act, *i.e.*, a substantial change in circumstances. *People ex rel. Spicer v. Coleman* (1979), 72

Ill. App. 3d 631, 637, 391 N.E.2d 46, 50.

▮▮ It has been stated that under the Illinois Marriage and Dissolution of Marriage Act, a showing of a substantial change in circumstances amounts to a showing both that the needs of the child have increased since the initial judgment and that the means of the defendant have increased during that time. (See *In re Sharp* (1978), 65 Ill. App. 3d 945, 948, 382 N.E.2d 1279, 1282; *Kelleher v. Kelleher* (1966), 67 Ill. App. 2d 410, 414, 214 N.E.2d 139, 141.) Since *Kelleher*, this standard has been stated less inflexibly:

> "It is still incumbent upon the court to consider *both* the needs of the children *and* the ability of the former spouses to pay when considering a petition to increase child support. But, instead of marching in step to some precise equation of percentage change, the court considers the children's needs as ranging from the bare necessities to the practical, to the useful, to the luxurious. Similarly, the court considers whether the means of each spouse has changed absolutely, has changed relative to the other, and has changed relative to the children's needs. The court must then accommodate, or adapt, or harmonize all these considerations to determine whether an increase in support is justified. Child support payments must necessarily reflect a balance of the intensity of the child's need with the ability of the parents to provide for that need." (*In re Sharp* (1978), 65 Ill. App. 3d 945, 949, 382 N.E.2d 1279, 1282-83.)

See *Metcoff v. Metcoff* (1972), 4 Ill. App. 3d 160, 161, 280 N.E.2d 572, 573; *Harding v. Harding* (1978), 59 Ill. App. 3d 25, 27, 374 N.E.2d 1304, 1306.

▮▮▮▮ In the case at bar there was adequate showing that the child's need had increased. True, inflation alone does not constitute a substantial change of circumstances (*Nordstrom v. Nordstrom* (1976), 36 Ill. App. 3d 181, 185, 343 N.E.2d 640, 643); however, absent evidence to the contrary, we may assume that the child's needs have increased due to rising costs of living and the child's advancing age. (*In re Sharp.*) While defendant's means as of 1967 were not shown, defendant was shown to have a present income far in excess of plaintiff's and to own considerable real and personal property without significant indebtedness. It appears that increasing defendant's support obligation will benefit the child significantly without hardship to defendant. We cannot say that the trial court abused its discretion in resolving these facts in favor of the child whose welfare the court was bound to protect in this proceeding. Additionally, we note that defendant's initial support order was stipulated to rather than judicially

fixed; thus, the instant petition for modification afforded the court its first opportunity to balance the child's need against defendant's means. We conclude that the trial court did not abuse its discretion in concluding that the evidence adduced warranted increase in defendant's support obligation.

Next, defendant argues that the court erred in making the support obligation "retroactive" to the date the petition for modification was filed. The Paternity Act does not state what date the court may use as the effective date of an order of increased child support. Defendant argues that the effective date cannot be prior to the date the modification order is filed. We disagree for several reasons. First, section 9 of the Paternity Act authorizes the trial court to make whatever supplementary orders are necessary with respect to child support. (Ill. Rev. Stat. 1981, ch. 40, par. 1359.) Where a petition alleges and a plaintiff establishes the existence of circumstances at the time of filing the petition which would warrant modification, it would be anomalous to conclude that the trial court could not fashion an order to meet that need. Second, the father's obligation under the Paternity Act is to support the child "to the same extent and in the same manner as the father of a child born in lawful wedlock ***." (Ill. Rev. Stat. 1981, ch. 40, par. 1352.) It is noteworthy that the Illinois Marriage and Dissolution of Marriage Act permits increases "retroactive" to the time of filing the petition for modification. (See Ill. Rev. Stat. 1981, ch. 40, par. 510(a); *In re Marriage of Junge* (1979), 73 Ill. App. 3d 767, 771, 392 N.E.2d 313, 316.) Section 2 of the Paternity Act implies that the father's obligation thereunder should extend back to the time of filing of the petition, because a lesser liability would not be "to the same extent" as that applicable to a child born in lawful wedlock under the Illinois Marriage and Dissolution of Marriage Act. Third, the main purpose of the Paternity Act is to provide for the support of illegitimate children so that those children will not become wards of the State. (*People ex rel. Blackmon v. Brent* (1968), 97 Ill. App. 2d 438, 442, 240 N.E.2d 255, 256-57.) This purpose could be virtually thwarted if the courts were without authority to order that an increase be effective prior to final judgment. We cannot adopt a construction of section 9 which would defeat the legislature's evident intent. See *Sickler v. National Dairy Products Corp.* (1977), 67 Ill. 2d 229, 235, 367 N.E.2d 674, 677.

Additionally, defendant argues that even if a "retroactive" award were possible under the Paternity Act, he was not notified by pleadings or formal request by petitioner that an award effective as of the filing of the petition for modification was being sought. We consider

the petition itself to have been implicit notice. That is, we see no justification for an assumption on defendant's part that plaintiff's plea for relief could be granted only as to payments accruing after the date the judgment complained of was rendered.

 Finally, defendant argues that the trial court erred in assessing part of the attorney fees incurred by plaintiff with respect to the petition for modification against defendant. In Illinois, attorney fees are not allowable absent a statute or contractual agreement providing therefor. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865.) Section 9 of the Paternity Act provides that if the trial court enters judgment to the effect that the defendant is father of the child in question, "the court shall take evidence upon the requirements of the child for its support, maintenance, education and welfare, and upon the expenses of the mother during pregnancy, confinement and recovery, and for reasonable attorney's fees and shall enter an order with respect thereto." (Ill. Rev. Stat. 1981, ch. 40, par. 1359.) Without further reference to the subject of attorney fees, section 9 further provides that the court may make new or supplementary orders "for the support, maintenance, education and welfare" of the child as from time to time the court deems necessary. (Ill. Rev. Stat. 1981, ch. 40, par. 1359.) Defendant argues that section 9 authorizes an award of attorney fees only for the initial determination of paternity and matters incident thereto, including support, but not for a subsequent petition for modification. Defendant urges for comparison section 508 of the Illinois Marriage and Dissolution of Marriage Act, which specifically provides for attorney fees incident to modification proceedings. (Ill. Rev. Stat. 1981, ch. 40, par. 508.) Defendant argues that the legislature is cognizant of the fact that attorney fees may be incurred in a modification proceedings, as evidenced by the latter enactment, and that the legislature's failure to do so in section 9 of the Paternity Act suggests that the legislature did not intend to allow fees in modification proceedings under the Paternity Act. Plaintiff responds that if we conclude that the Paternity Act does not provide for attorney fees for modification proceedings, attempts to obtain modification of support provisions would be seriously deterred at the expense of the child.

 ██ Rules of statutory construction are useful only where there is doubt as to the meaning of a statute. A court may not alter that meaning beyond the clear import of the language employed. (*Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 755, 442 N.E.2d 1374, 1377.) We find that section 9 of the Paternity Act is not ambiguous on the issue of allowance of at-

torney fees in modification proceedings. And, since there is no statutory or contractual obligation for the payment of such fees, we conclude that none are allowable. Furthermore, there is no showing in the case at bar that plaintiff requested the State's Attorney to represent her, which she was at liberty to do under the provisions of section 4 of the Paternity Act (Ill. Rev. Stat. 1981, ch. 40, par. 1354). We are quite aware that to construe the Paternity Act in this restrictive manner tends to defeat the primary purpose of the Paternity Act at the expense of the welfare of the child. Nevertheless, the award of attorney fees in modification proceedings instituted under the Paternity Act is a matter for legislative enactment and not judicial fiat.

In view of our determination that the trial court improperly awarded plaintiff attorney fees in the instant case, it is unnecessary that we consider defendant's final contention that the evidence did not show defendant's ability to pay plaintiff's attorney fees, or plaintiff's inability to pay them.

For the foregoing reasons, the judgment of the circuit court of Madison County awarding plaintiff $150 per month as child support retroactive to October 25, 1977, is affirmed, and that portion of said judgment ordering defendant to pay plaintiff's attorney fees in the amount of $2,325 is reversed.

Affirmed in part and reversed in part.

KARNS and WELCH, JJ., concur.