(No. 67805.—)

*In re* MARRIAGE OF RITARAY ADAMS, Appellee, and
JOHN N. ADAMS, Appellant.

*Opinion filed February 16, 1990.*

Schiller, Du Canto & Fleck, Ltd., of Chicago (Sarane C. Siewerth, of counsel), for appellant John N. Adams.

William G. Rosing, Charles W. Smith and Stephen G. Applehans, of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellee Ritaray Adams.

Julie A. Lundquist, of Lundquist & Mitchell, of Zion, for minor John David Adams.

JUSTICE MILLER delivered the opinion of the court:

On March 13, 1986, Ritaray Adams filed in the circuit court of Lake County a petition seeking the dissolution of her marriage to John N. Adams. In the petition Rita-

ray requested support for a child, John David Adams (J.D.), born during the marriage. J.D. had been conceived through the artificial insemination of an anonymous donor's semen. In answer to the petition John denied that he was the child's father and, in what was termed an affirmative defense, asserted that he did not consent to the procedure that resulted in the child's conception. Following an evidentiary hearing, the trial judge ruled that a parent-child relationship existed between John and J.D. The trial judge subsequently entered a judgment of dissolution of marriage and ordered John to pay child support for J.D. The appellate court affirmed the circuit court's judgment. (174 Ill. App. 3d 595.) We allowed John's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The facts of the present case are set forth fully in the appellate court opinion and will be restated here only to the extent necessary. John and Ritaray were married on June 3, 1983, in Lake County, Illinois. At the time of the marriage John was 32 years old and Ritaray was 19. Both John and Ritaray had been married once before, and John, but not Ritaray, had children from the prior marriage. John was a commissioned officer in the United States Navy and served as a physician's assistant in a naval base clinic. Before their marriage, John informed Ritaray that he had previously undergone a vasectomy and probably would not be able to father any additional children. John agreed, however, to explore with Ritaray various options that would enable them to start a family of their own.

In August 1983 John was reassigned by the Navy and the Adamses moved to Jacksonville, Florida. Over the course of the following year, the couple investigated several methods of having a family. In June 1984 John and Ritaray began discussing artificial insemination by donor (AID), also known as heterologous artificial insemination.

Through that procedure, a woman is artificially inseminated with semen of a man other than her husband. By August 1984 John had obtained the name of a fertility specialist in Jacksonville, Dr. Ernest Ferrell, and Ritaray made an appointment for an initial consultation. On September 28, 1984, John and Ritaray met with Dr. Ferrell to learn more about AID. It appears that by the end of the appointment the Adamses had not decided whether to make use of the procedure, and at that time they did not schedule any further appointments.

During October and November 1984, Ritaray arranged with Dr. Ferrell to have two sonograms performed in preparation for heterologous artificial insemination. John had advance notice of both appointments with Dr. Ferrell but did not accompany Ritaray on either occasion. On November 26, 1984, several days after the second sonogram, Ritaray was heterologously inseminated through a procedure performed by Dr. Ferrell. Again, John knew of Ritaray's plans in advance but did not accompany her to the appointment. The next month the couple learned that Ritaray was pregnant. During the pregnancy, the Adamses continued to live together in Jacksonville, Florida, and J.D. was born there on August 4, 1985. At Ritaray's direction, John was designated on the birth certificate as the child's father.

On October 1, 1985, Ritaray and J.D. left for Illinois, where Ritaray's family lived, while John remained in Florida. On January 2, 1986, the couple met in Illinois, and John informed Ritaray that he wanted a divorce. Following a period of discussion between the two concerning child support for J.D., among other matters, Ritaray filed a petition for dissolution of marriage in the circuit court of Lake County on March 13, 1986. In the petition, Ritaray alleged that J.D. was born as a result of her marriage to John, and she asked that she be granted sole custody of the child and awarded child sup-

port. In answer to the petition, John acknowledged that J.D. was born during the marriage but, because he had undergone an irreversible vasectomy prior to the marriage, denied that he was the child's father. John further asserted, in what was labeled an affirmative defense, that the child was conceived as a result of AID and that he had not consented to the procedure, either orally or in writing. In response to John's affirmative defense, Ritaray admitted that J.D. was conceived through heterologous insemination but denied John's allegation that he had not given his consent.

John subsequently moved for summary judgment on the parentage issue, arguing that there was no dispute that he had not provided written consent to the AID procedure leading to J.D.'s conception. Attached to the motion were copies of the relevant Illinois and Florida statutes, and it was John's theory that both States require that a husband furnish written consent to his wife's heterologous artificial insemination before a parent-child relationship will be recognized between a husband and a child who is born as a result of that procedure. John asked that the court enter a judgment declaring that no parent-child relationship existed between himself and J.D., that he was not J.D.'s natural or legal father, and that he had no duty to support J.D. In response to John's motion for summary judgment, Ritaray asserted that two genuine questions of material fact remained: whether John had given oral consent to the AID procedure, and whether John had "actually initiated and assisted in the procreation[] of the minor child." Ritaray therefore asked that the motion for summary judgment be denied. Both John and Ritaray submitted their own affidavits in support of their respective pleadings.

Following a hearing, the trial judge denied John's motion for summary judgment. In a written order, the judge found that John had not provided written consent

to Ritaray's heterologous artificial insemination. The judge stated, however, that an issue existed whether John had given actual consent to the procedure and, if so, whether actual consent would "constitute a waiver of the statutory requirement that the Husband's consent must be in writing executed and acknowledged by both Husband & Wife."

Prior to trial, counsel for John and Ritaray agreed that the question of J.D.'s parentage would be determined first, before any of the other matters were resolved. On the eve of trial, counsel was appointed to represent J.D. during the remainder of the proceedings. At the outset of the evidentiary hearing on the parentage issue, John and Ritaray stipulated that the question would be determined under Illinois law; counsel for the minor stated that she had no objection to the stipulation. John and Ritaray also reaffirmed their earlier stipulation that J.D. was born as a result of Ritaray's heterologous artificial insemination and that John had not furnished written consent to the procedure.

Following the hearing on the parentage question, the trial judge ruled that John was estopped from denying his paternity of J.D. The trial judge, in his memorandum of opinion, suggested that in cases involving heterologous artificial insemination there may exist a presumption of initial consent on the part of the husband. Furthermore, the trial judge placed on John the burden of proving that he did not consent to the AID procedure; the judge assigned that burden to John because he had raised the allegations of nonconsent as an affirmative defense in his answer to Ritaray's petition for dissolution of marriage. In resolving the paternity issue, the trial judge purported to measure "John's burden on the affirmative defense *** with the rebuttable presumption of initial consent under [sic] Rita[ray]'s burden on the issue of estoppel." The trial judge concluded that John, by his

actions, had consented to Ritaray's heterologous artificial insemination and that John therefore was estopped from denying the existence of a parent-child relationship with J.D. The trial judge accordingly ruled that John was the legal father of J.D. Following a subsequent hearing devoted to the issues remaining, the trial judge entered judgment dissolving the marriage. With respect to J.D., the judge awarded Ritaray custody of the child, granted John reasonable visitation rights, and ordered John to pay $240 a month in child support.

The appellate court, with one justice dissenting, affirmed the circuit court's judgment. (174 Ill. App. 3d 595.) The appellate court agreed with the trial judge that the Illinois statute does not bar the imposition of a support obligation under an estoppel theory when the husband's written consent has not been obtained. The court upheld the trial judge's finding that John consented to Ritaray's heterologous artificial insemination and rejected John's argument that the amount of child support awarded was an abuse of discretion. Although the court in its opinion spoke mainly of the obligation of support, as distinguished from the establishment of a parent-child relationship, the court did not clearly separate the two and, as we have said, affirmed the judgment of the circuit court, which found both to exist. The dissenting justice agreed with the majority that a support obligation may be sustained under the Illinois statute by an estoppel theory, but he would have remanded the cause for further consideration because he believed that the trial judge had improperly placed on John the burden of proving his lack of consent to the AID procedure. We allowed John's petition for leave to appeal (107 Ill. 2d R. 315(a)).

At the outset we consider, on our own motion, the applicability of Illinois law to the case at bar. As we have stated, prior to trial John and Ritaray stipulated that the question of J.D.'s parentage should be determined under

Illinois law rather than Florida law. Counsel for J.D. had no objection to the stipulation, and it appears that the minor's counsel believed that the result would be the same under the law of either State. The trial judge accepted the stipulation.

The issues raised in the case at bar are questions of first impression under both Illinois and Florida law. Patterned after section 5 of the Uniform Parentage Act (Uniform Parentage Act §5, 9B U.L.A. 301 (1987)), section 3(a) of the Illinois Parentage Act provides, in pertinent part:

> "If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband shall be treated in law as if he were the natural father of a child thereby conceived. The husband's consent must be in writing executed and acknowledged by both the husband and wife." (Ill. Rev. Stat. 1987, ch. 40, par. 1453(a).)

A child conceived in the manner described will be regarded under Illinois law as the legitimate offspring of the husband and wife. See Ill. Rev. Stat. 1987, ch. 40, par. 1452.

The relevant Florida statute provides:

> "Any child born within wedlock who has been conceived by the means of artificial insemination is irrebuttably presumed to be legitimate, provided that both husband and wife have consented in writing to the artificial insemination." Fla. Stat. Ann. §742.11 (West 1986).

Without deciding the question here, we note that the provision in the Illinois statute that the husband's consent to the AID procedure "must be in writing" could be considered a mandatory requirement for establishing a parent-child relationship pursuant to the statute. (See *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21 (the word "must" is generally construed in a mandatory sense).) In

Florida, however, the absence of written consent might simply fail to establish an irrebuttable presumption of legitimacy, and legitimacy might still be provable by other means, such as under an estoppel theory. Moreover, it is not clear whether under either statute the failure to provide written consent will preclude both the establishment of a parent-child relationship and the imposition of a support obligation. It may be the case that a support obligation will be found even in the absence of a parent-child relationship.

It is, of course, this court's duty to ensure, in an action involving a minor's interests, that the rights of the child are adequately protected. (See *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 555.) The interests of a minor are at stake in the present matter, and it is appropriate that we recognize irregularities occurring in the proceedings below, despite the absence of an appropriate objection by the minor's counsel. See *Jenkins v. Hechtman* (1967), 83 Ill. App. 2d 72, 78-79; see also *Cogan v. KAL Leasing, Inc.* (1989), 190 Ill. App. 3d 145, 152 (*Muscarello* doctrine properly invoked only in cases involving fraud, violation of fiduciary interest, or ineffective assistance of counsel).

The trial judge was not bound to follow the parties' stipulation that Illinois rather than Florida law should govern the present case. Although Illinois courts have recognized the enforceability of choice-of-law clauses in contracts (see *Reighley v. Continental Illinois National Bank & Trust Co.* (1945), 390 Ill. 242, 249), litigants' stipulations to the scope or meaning of the law itself are not binding on a court (see *Wiegel v. One LaSalle Co.* (1966), 75 Ill. App. 2d 272, 276). It has been held that, just as parties to an action have no authority to stipulate to the meaning of a law, litigants have no authority to choose, by stipulation, the law applicable to a particular suit. (See *Ezell v. Hayes Oilfield Construction Co.* (5th

Cir. 1982), 693 F.2d 489, 492 n.2; *Consolidated Water, Power & Paper Co. v. Spartan Aircraft Co.* (3d Cir. 1950), 185 F.2d 947, 949.) Other cases, however, have taken a different view, recognizing litigants' reasonable stipulations regarding the choice of law in a case. (*Twohy v. First National Bank* (7th Cir. 1985), 758 F.2d 1185, 1190-91; *Lloyd v. Loeffler* (7th Cir. 1982), 694 F.2d 489, 494.) We need not determine here whether such an agreement should ever be permitted by a court of this State, for we do not believe that the stipulation in the present case was reasonable.

The agreement by counsel for John, Ritaray, and J.D. that Illinois law should govern the case at bar was contrary to the result that would be reached through application of the customary choice-of-law principles. This court has previously relied on the principles contained in the Restatement (Second) of Conflicts in resolving conflict-of-laws questions. (See *Nelson v. Hix* (1988), 122 Ill. 2d 343; *Ingersoll v. Klein* (1970), 46 Ill. 2d 42 (applying draft provision later incorporated in current Restatement); *Wartell v. Formusa* (1966), 34 Ill. 2d 57 (same).) Concerning legitimacy, section 287(1) of the Restatement (Second) provides:

> "Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent under the principles stated in §6." (Restatement (Second) of Conflict of Laws §287(1) (1971).)

Section 6 of the Restatement (Second) provides that in the absence of a local statute on choice of law, a court should consider, among other things, "the relative interests of those states in the determination of the particular issue," "the protection of justified expectations," "the basic policies underlying the particular field of law," and "certainty, predictability and uniformity of result." Re-

statement (Second) of Conflict of Laws §§6(2)(c), (2)(d), (2)(e), (2)(f) (1971).

Applying those principles to the present case, we conclude that Florida has the more significant relationship to the dispute. Ritaray was heterologously inseminated in Florida, the Adamses were residents of Florida at that time and continued to live there during the course of the pregnancy, and the child was born in Florida. In the performance of the AID procedure and its legal consequences, Dr. Ferrell and the Adamses would have looked to Florida law, rather than Illinois law, for guidance. Indeed, whether a parent-child relationship exists between a husband and a child born to the wife as a result of heterologous artificial insemination should not depend on the laws of every State in which the family members may find themselves in the future. The parties to such a procedure will expect that their own local law will govern the relationships created by it, and application of Florida's law to the present case will fulfill the participants' expectations and will help ensure predictability and uniformity of result. The parties' stipulation that Illinois law should govern the dispute was unreasonable.

Under the present circumstances, we conclude that Florida law, not being repugnant to Illinois public policy, governs the determination of the questions whether a parent-child relationship will be recognized and whether John has a duty to support the child. Accordingly, we decline to accept the parties' stipulation that Illinois law should govern those determinations. We do not believe that we should allow the minor to forgo what benefits may exist for him under the Florida statute and to stipulate instead to the application of what is perhaps the more stringent provision. Because the matter was decided in the circuit court under what we have determined to be the inappropriate law, and because the par-

ties have not yet had an opportunity to brief and argue the relevant issues under the Florida statute, we must reverse the judgments of the courts below and remand the cause to the circuit court for further proceedings.

Finally, we note John's argument that the circuit court incorrectly required him to prove his lack of written and oral consent to Ritaray's decision to undergo heterologous artificial insemination. John contends that if written consent is not an indispensable requirement of the Illinois statute, it was Ritaray's burden to establish the necessary estoppel. That would appear to more properly accomplish the purpose of the legislation. As the dissenting justice in the appellate court observed, "Had the legislature intended that the burden of proving nonconsent would be on the husband, the requirement of written consent would not have been necessary." (174 Ill. App. 3d at 619 (Dunn, J., dissenting).) We have determined, however, that Florida law controls, and it may be that Florida law requires a different result.

For the reasons stated, the judgments of the appellate court and the circuit court of Lake County are reversed, and the cause is remanded to the circuit court of Lake County for further proceedings.

*Judgments reversed;*
*cause remanded.*