*In re* MARRIAGE OF MARCIA WITBECK-WILDHAGEN, Petitioner-Appellant, and ERIC WILDHAGEN, Respondent-Appellee.

Fourth District   No. 4—95—0709

Argued February 14, 1996.—Opinion filed June 20, 1996.

James L. Dobrovolny (argued), of Dobrovolny Law Offices, of Urbana, for appellant.

Sarah B. Tinney (argued), of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Marcia Witbeck-Wildhagen, filed a petition for dissolution of marriage on January 26, 1994. One issue raised during the dissolution action was whether respondent, Eric Wildhagen, was the legal father of a child conceived by artificial insemination and born during the marriage. The trial court determined respondent is not the legal father of the child because he did not consent to the artificial insemination of petitioner, as required by section 3 of the Illinois Parentage Act (Act) (750 ILCS 40/3 (West 1994)). Petitioner appeals and we affirm.

Petitioner and respondent were married in November 1990. In April 1992, petitioner and respondent consulted with a nurse clinician at Christie Clinic regarding the procedure of artificial insemination. At the consultation, respondent made it clear to petitioner and the nurse he did not want to participate in, nor did he consent to, petitioner's attempts to become pregnant. Petitioner acknowledges at the consultation respondent expressed his desire not to participate in her attempt to have a baby, but alleges respondent said it would be all right if she pursued the pregnancy alone. Whenever respondent had sexual relations with petitioner, he used a condom to prevent pregnancy. Following the initial consultation at Christie Clinic, petitioner underwent seven artificial insemination procedures. Respondent was not informed of this by Christie Clinic or by petitioner.

In approximately October 1993, petitioner became pregnant. In January 1994, she filed a petition for dissolution of marriage. The petition stated no children were born during the marriage but petitioner was pregnant. The complaint alleged petitioner did not have sufficient property and income to provide for her reasonable needs or those of her unborn child. Petitioner sought custody of the unborn child and asked the court to order respondent to pay reasonable sums for her maintenance, support of the unborn child, and prenatal and delivery expenses.

On July 2, 1994, petitioner gave birth to a son, M.W. In September 1994, respondent filed a motion for blood testing, which was allowed. Petitioner's attorney then notified respondent, in a letter dated September 14, 1994, of the seven artificial insemination procedures, the last of which, the letter stated, may have resulted in

the conception of M.W. The parties and M.W. underwent blood testing in November 1994. Respondent was conclusively excluded as M.W.'s biological father.

In February 1995, petitioner filed a motion for summary determination of a major issue (motion for summary determination) under section 2—1005(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1005(d) (West 1994)). In the motion, petitioner acknowledged respondent was not M.W.'s biological father and had not given his written consent to her artificial insemination. Nonetheless, petitioner asked the court to find respondent to be the legal father of M.W. within the meaning of the Act (750 ILCS 40/3 (West 1994)). The court heard arguments on the motion for summary determination and determined, under its interpretation of section 3 of the Act, respondent is not the legal father of M.W.

Following this ruling, the parties executed a marital settlement agreement which reflected the court's earlier decision and in which they set forth their agreements on the remaining issues. On August 4, 1995, the trial court entered a judgment of dissolution of marriage, which incorporated the marital settlement agreement, and entered a final order stating respondent is not the legal father of M.W. Petitioner filed a timely notice of appeal and asks this court to reverse the trial court's determination respondent is not the legal father of M.W.

The issue presented is whether, under section 3 of the Act, the lack of written consent by respondent to petitioner's artificial insemination precludes the establishment of a father-child relationship and the imposition of a support obligation.

■ Section 3(a) of the Act provides:

"(a) If, under the supervision of a licensed physician *and with the consent of her husband*, a wife is inseminated artificially with semen donated by a man not her husband, *the husband shall be treated in law as if he were the natural father* of a child thereby conceived. *The husband's consent must be in writing* executed and acknowledged by both the husband and wife. *The physician* who is to perform the technique *shall certify their signatures and the date of the insemination, and file the husband's consent* in the medical record where it shall be kept confidential and held by the patient's physician. However, *the physician's failure to do so shall not affect the legal relationship between father and child.* All papers and records pertaining to the insemination, whether part of the permanent medical record held by the physician or not, are subject to inspection only upon an order of the court for good cause shown." (Emphasis added.) 750 ILCS 40/3(a) (West 1994).

Only one Illinois case has analyzed this provision of the Act. In

*In re Marriage of Adams,* 174 Ill. App. 3d 595, 610-11, 528 N.E.2d 1075, 1084 (1988), *rev'd on other grounds,* 133 Ill. 2d 437, 551 N.E.2d 635 (1990), the Second District Appellate Court decided the failure to obtain the husband's *written* consent does not bar further inquiry into the circumstances surrounding the decision to use the artificial insemination procedure. The court examined the surrounding circumstances in the case and, although the husband had not executed a written consent to his wife's artificial insemination, agreed with the trial court's finding he had manifested his consent by his conduct before, during, and after the pregnancy. *Adams,* 174 Ill. App. 3d at 615, 528 N.E.2d at 1087. The court concluded nothing in section 3 bars the imposition of a support obligation on an estoppel or waiver theory where *written* consent is not obtained. Thus, the court imposed a support obligation on the husband, who had manifested actual consent to the procedure by his conduct. In *Adams* the court found the husband *consented* to the procedure. In this case respondent did not consent to the artificial insemination procedure, either in writing or in any other manner.

After the appellate court decision in *Adams,* the Supreme Court of Illinois reviewed the case but, because it determined Florida law was controlling and remanded the case, the court did not render a conclusive interpretation of section 3 of the Act. *In re Marriage of Adams,* 133 Ill. 2d 437, 551 N.E.2d 635 (1990). In a cursory discussion of both section 3 of the Act and the applicable Florida statute, the court stated, "we note that the provision in the Illinois statute that the husband's consent *** 'must be in writing' *could be* considered a *mandatory* requirement for establishing a parent-child relationship pursuant to the statute." (Emphasis added.) *Adams,* 133 Ill. 2d at 444, 551 N.E.2d at 638. The court went on to note:

> "[I]t is not clear whether under either statute the failure to provide *written consent* will preclude both the establishment of a parent-child relationship and the imposition of a support obligation. It may be the case that a support obligation will be found even in the absence of a parent-child relationship." (Emphasis added.) *Adams,* 133 Ill. 2d at 445, 551 N.E.2d at 638.

The court in *Adams* was considering only the possible effects of the failure to obtain *written* consent. It did not indicate the consent requirement could be waived entirely. *Adams,* 133 Ill. 2d at 444, 551 N.E.2d at 638.

Petitioner argues the language of the statute indicates respondent's written consent is not a prerequisite to the establishment of a father-child relationship. Her argument focuses on the following language: "the physician's failure to do so shall not affect the legal

relationship between father and child." 750 ILCS 40/3(a) (West 1994). This language appears immediately after the description of the physician's duties of certifying the signatures of the husband and wife and the date of insemination and filing the husband's consent in the medical record. Petitioner contends, however, the quoted language means "the physician's failure to *obtain the consent* shall not affect the legal relationship between father and child." (Emphasis added.) The plain language and structure of the statute does not lend itself to such a reading, nor do we believe this interpretation is what the legislature intended.

■ The first sentence of section 3 of the Act provides, "*[i]f,* under the supervision of a licensed physician *and with the consent of her husband*, a wife is inseminated artificially with semen donated by a man not her husband, the husband shall be treated in law as if he were the natural father." (Emphasis added.) 750 ILCS 40/3(a) (West 1994). The Act then states, "[t]he husband's consent must be in writing." 750 ILCS 40/3(a) (West 1994). Following these statements is the explanation of what the duties of the physician performing the procedure are in terms of documenting the husband's consent, and the statement which provides, "*the physician's failure* to do so shall not affect the legal relationship between father and child." (Emphasis added.) 750 ILCS 40/3(a) (West 1994). This language refers to the physician's failure to *certify* and *document* the consent in accordance with the statute and cannot be interpreted as obviating the consent requirement.

We conclude the legislature intended a husband's written consent to be a prerequisite to the establishment of the legal father-child relationship and the imposition of a support obligation. The several provisions in section 3 of the Act which address the consent requirement would be superfluous if the failure to obtain the husband's written consent would not affect the legal status of the individuals involved.

In addition, because the statute requires the physician to certify the *date* of insemination, we conclude the husband's written consent is required *each time* his wife is to undergo the procedure. 750 ILCS 40/3(a) (West 1994). Such a requirement is not burdensome and it leaves no room for confusion on the part of the married couple or the physician regarding whether a consent previously given by the husband is still viable.

On the facts of this case, we need not decide whether the failure to obtain written consent would be an absolute bar to the establishment of a father-child relationship where the conduct of the father otherwise demonstrated his consent to the artificial insemination

procedure. Such a situation was present in *Adams* and has also been addressed by commentators and the courts of other states. See *In re Marriage of L.M.S.*, 105 Wis. 2d 118, 312 N.W.2d 853 (1981); *K.S. v. G.S.*, 182 N.J. Super. 102, 440 A.2d 64 (1981); Note, *The Legal Incubation of Artificial Insemination: A Proposal to Amend the Illinois Parentage Act*, 18 J. Marshall L. Rev. 797, 799 (1985); Comment, *Artificial Human Reproduction: Legal Problems Presented by the Test Tube Baby*, 28 Emory L.J. 1045, 1076 (1979); Comment, *Artificial Insemination and Surrogate Motherhood—A Nursery Full of Unresolved Questions*, 17 Willamette L. Rev. 913, 939 (1981).

■ Here, there is no evidence of consent by respondent to the artificial insemination procedure, written or otherwise. Petitioner filed for a dissolution of marriage within two or three months of becoming pregnant. She was impregnated by the sperm of a man other than respondent, without respondent's knowledge or consent, and apparently without any intention of raising the child with respondent. In her brief, petitioner admits she underwent the procedure relying on her doctor's written assurance respondent would be legally responsible for her child, even though it was not his wish she have a child. There is no evidence in the record of any contact or interaction between respondent and M.W., and petitioner had M.W.'s last name legally changed to her maiden name. Under the facts of this case, there is no statutory or equitable basis for concluding a father-child relationship exists between respondent and M.W.

Petitioner urges this court to impose a support obligation on respondent, even absent the existence of a father-child relationship, contending any other result would be contrary to public policy. The two primary policy considerations here are (1) M.W.'s right to support, and (2) respondent's right to choose not to be a parent.

Just as a woman has a constitutionally protected right not to bear a child (see *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973)), a man has the right not to be deemed the parent of a child that he played *no* part in conceiving. Respondent made a choice not to parent a child. This choice was evidenced by not giving his consent to petitioner or any support to her choice to undergo artificial insemination. Petitioner underwent the procedure unbeknownst to respondent. Respondent was only informed of the manner in which M.W. was conceived *after* M.W. was born, by his attorney. This is not a case where respondent has changed his mind or is attempting to evade responsibility for his own actions in helping to conceive or encouraging the conception of a child. The facts of this case illustrate, and the trial court correctly determined, it would be inconsistent with public policy to force upon respondent parental obligations which he declined to undertake.

508

The second policy consideration here is M.W.'s right to support. The main purpose of the policy recognizing a child's right to support is to prevent minors from becoming dependent on the State. *Fink v. Roller*, 113 Ill. App. 3d 1084, 1089, 448 N.E.2d 204, 207 (1983). The trial court's order demonstrates it considered M.W.'s need for support and found that support would be forthcoming from his mother. The child's right to support cannot be met by requiring a nonparent to fulfill the obligation of a parent. Respondent has no financial obligation to this child.

It is the duty of the court to ensure the rights of the child are adequately protected. In this case, the trial court did so, and the balance it struck between the attendant interests of the parties was appropriate. It would be unjust to impose a support obligation on respondent where no father-child relationship exists between him and M.W. and he did not consent to the artificial insemination procedure. Accordingly, we affirm.

Affirmed.

COOK, P.J., and GREEN, J., concur.