*In re* PARENTAGE OF M.J. *et al.*, Minors (Alexis Mitchell, Indiv. and as Guardian and Next Friend on Behalf of Minors M.J. and N.J., Plaintiff-Appellant, v. Raymond Banary, Defendant-Appellee).

First District (1st Division)   No. 1—00—0590

Opinion filed October 29, 2001.—Rehearing denied November 29, 2001.

---

TULLY, J., dissenting.

Enrico J. Mirabelli, of Nadler, Pritikin & Mirabelli, of Chicago, for appellant.

Cahill, Christian & Kunkle, Ltd., of Chicago (Louis B. Garippo and Frederic T. Knape, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Alexis Mitchell, individually and on behalf of her minor children, M.J. and N.J., filed a complaint against defendant, Raymond Banary. In her complaint, plaintiff sought to establish paternity and to impose support obligations for the benefit of twin boys that she conceived through artificial insemination. Defendant was not the semen donor. The complaint sought recovery on the basis of breach of an oral contract and promissory estoppel. The complaint further alleged that defendant had support obligations pursuant to the Illinois Parentage Act (Act) (750 ILCS 40/1 et seq. (West 1998)).

Defendant filed a motion to dismiss, alleging that plaintiff failed to set forth a legally recognized basis for relief under the Act. The motion to dismiss further alleged that the purported oral agreement was unenforceable under the Frauds Act (740 ILCS 80/1 (West 1998)) and contravened Illinois public policy. The trial court granted defendant's motion and plaintiff's complaint was dismissed in its entirety.

On appeal, plaintiff argues that: (1) the trial court erred in finding that plaintiff did not properly plead a cause of action for promissory

estoppel or breach of an oral agreement; (2) the trial court erred in finding that it lacked subject matter jurisdiction; and (3) the Act unconstitutionally discriminates between children born through artificial insemination to married persons and children born through artificial insemination to unmarried persons.

## BACKGROUND

According to plaintiff's complaint, plaintiff is a single, 40-year-old African-American woman. Defendant is a Caucasian male who was 57 years old at the time of the filing of the complaint. Plaintiff and defendant first met in 1986 and began an intimate relationship that lasted until 1996. When they met, defendant introduced himself as "Jim Richardson" and indicated that he was divorced. However, in 1996 plaintiff discovered that defendant was not named Jim Richardson and that he was married.

During their relationship, the parties discussed marriage. Defendant told plaintiff that he would have to wait until retirement for marriage because the community where he resided would not accept a black woman. Upon retirement, defendant promised plaintiff that they could move to another community and be married.

The parties also discussed plaintiff's desire to have children with defendant. Despite sexual relations, plaintiff did not become pregnant and it became apparent that defendant was not capable of fathering children. In 1991, defendant allegedly suggested to plaintiff that she become artificially inseminated. Defendant provided financial assistance for the insemination procedure; accompanied plaintiff to the doctor's office for examinations; assisted plaintiff by injecting her with medication designed to enhance her fertility; and decided with plaintiff that the sperm be from a Caucasian donor so that the offspring would appear to be a product of their relationship. Plaintiff further alleges that defendant orally promised to support the child when it was born; however, no writing memorializes this representation.

Plaintiff became pregnant and gave birth to twin boys in 1993. After the birth, defendant allegedly acknowledged the children as his own. He also provided support for them in the form of monthly payments of cash and the purchase of food, clothing, furniture, toys and play equipment. In her complaint, plaintiff further describes vacations with defendant and that defendant also paid for the children's medical and travel expenses.

After plaintiff discovered defendant's marital status, she and defendant terminated their relationship. Since 1996, defendant has stopped providing financial support for the children.

Plaintiff filed her three-count complaint on May 11, 1999. The

first two counts sought to establish an obligation of support on the basis of breach of oral contract and promissory estoppel. The third count requested a declaration of paternity and obligation of support pursuant to the Act.

Defendant filed a motion to dismiss under section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 1998)). Defendant argued that count III should be dismissed pursuant to section 2—615 (735 ILCS 5/2—615 (West 1998)), where plaintiff failed to set forth a legally recognized basis for the imposition of a father-child relationship or for child support under the Act. Defendant further argued that counts I and II should be dismissed under section 2—619 (735 ILCS 5/2—619 (West 1998)) because plaintiff's common law claims were unenforceable under the provisions of the Frauds Act and contravened Illinois public policy.

On December 21, 1999, the trial court held a hearing on this matter. On January 14, 2000, the trial court issued a written order granting the defendant's motion and dismissed the case in its entirety.

Plaintiff appeals. We affirm.

## ANALYSIS

### I. CONTRACT CLAIMS

■ As an initial matter, we note that defendant brought his motion to dismiss under section 2—619.1 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619.1 (West 1998)). Section 2—619.1 allows a litigant to combine a section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1998)) and a section 2—619 motion for involuntary dismissal (735 ILCS 5/2—619 (West 1998)) into one pleading. *Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1047, 700 N.E.2d 202 (1998).

■ A section 2—615 motion poses the question of whether the complaint states a cause of action upon which relief can be granted. *Storm*, 298 Ill. App. 3d at 1046, citing *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 505, 565 N.E.2d 654 (1990). A section 2—619 motion, on the other hand, raises certain defects or defenses and questions whether defendant is entitled to judgment as a matter of law. *Storm*, 298 Ill. App. 3d at 1047, citing *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 494, 639 N.E.2d 1282 (1994). Since the resolution of either motion only involves a question of law, the standard of review is *de novo*. *Storm*, 298 Ill. App. 3d at 1047. On a motion to dismiss, this court must accept all well-pleaded facts as true. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329, 371 N.E.2d 634 (1977).

In the instant case, defendant sought dismissal of count III based upon section 2—615. In support of his motion to dismiss counts I and

II, defendant relied upon section 2—619 and also incorporated some of his section 2—615 arguments from count III.

Plaintiff argues that the trial court erred in finding that she did not properly plead a cause of action for breach of an oral agreement or promissory estoppel. In response, defendant contends that plaintiff's common law theories for child support fail in light of the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (West 1998)).

■ The Act governs the treatment of a child born as a result of heterologous artificial insemination. Specifically, section 3(a) sets forth the conditions under which the husband of a wife artificially inseminated would be treated as the natural father. Section 3 states in pertinent part:

"§ 3. (a) If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband shall be treated in law as if he were the natural father of a child thereby conceived. The *husband's consent must be in writing* executed and acknowledged by both the husband and wife. ***

(b) The donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife shall be treated in law as if he were not the natural father of a child thereby conceived." (Emphasis added.) 750 ILCS 40/3 (West 1998).

The parties dispute whether written consent is mandated by section 3(a) before a person can be deemed a natural father and therefore be obligated to support the child. Only two Illinois cases have interpreted section 3(a) of the Act: *In re Marriage of Adams*, 174 Ill. App. 3d 595, 528 N.E.2d 1075 (1988), *rev'd on other grounds*, 133 Ill. 2d 437, 551 N.E.2d 635 (1990), and *In re Marriage of Witbeck-Wildhagen*, 281 Ill. App. 3d 502, 667 N.E.2d 122 (1996).

In *Adams*, the respondent had a vasectomy before marrying the petitioner. *Adams*, 174 Ill. App. 3d at 599. The petitioner, however, still wished to have a child and went through heterologous artificial insemination in Florida. *Adams*, 174 Ill. App. 3d at 601-03. A child was born during the marriage and petitioner moved to Illinois with the baby a few months later. Respondent remained in Florida. Petitioner later filed for a divorce in Illinois and sought support from respondent. *Adams*, 174 Ill. App. 3d at 603-04. Respondent denied that he consented to the artificial insemination and moved for summary judgment because he did not give written consent, as required by Illinois statute. *Adams*, 174 Ill. App. 3d at 604-05.

The appellate court held that the husband's failure to execute a written consent did not bar further inquiry into the circumstances

surrounding the decision to utilize artificial insemination. *Adams*, 174 Ill. App. 3d at 610-11. The appellate court affirmed the trial court's finding that there was "actual consent" by respondent to the insemination procedure for two main reasons: (1) respondent had listed the child as a dependent on his income tax return; and (2) respondent had accepted joint responsibility for the child in the marriage dissolution agreement that he had prepared. *Adams*, 174 Ill. App. 3d at 614.

The Illinois Supreme Court reversed and remanded the case, holding that Florida law governed because the parties had resided there for the procedure. Since Florida law was controlling, the court did not conclusively interpret section 3(a) of the Act. *In re Marriage of Adams*, 133 Ill. 2d 437, 551 N.E.2d 635 (1990). However, in *dicta* the court stated the requirement that the "husband's consent *** 'must be in writing' could be considered a mandatory requirement for establishing a parent-child relationship pursuant to the statute." *Adams*, 133 Ill. 2d at 444. The court further commented:

> "[I]t is not clear whether under either statute the failure to provide written consent will preclude both the establishment of a parent-child relationship and the imposition of a support obligation. It may be the case that a support obligation will be found even in the absence of a parent-child relationship." *Adams*, 133 Ill. 2d at 445.

The comments by the Illinois Supreme Court in *Adams* and the court's statement that the requirement that the "husband's consent *** 'must be in writing' could be considered a mandatory requirement for establishing a parent-child relationship pursuant to the statute" are noteworthy. *Adams*, 133 Ill. 2d at 444. In our view, the "must be in writing" is a mandatory requirement for establishing a parent-child relationship pursuant to the statute. Where a husband and wife relationship exists and a child is born as a result of heterologous artificial insemination, it may be that a support obligation can be found even in the absence of a parent-child relationship. However, in our view, it is clear that the legislature intended the Act to only provide for conditions under which the husband of a wife artificially inseminated heterologously would be treated as the natural parent. By requesting that the Act be applied to unmarried persons, plaintiff seeks an extension of the Act. However, if the Act is to be so extended, the legislature and not the courts must do so. See *Roanoke Agency, Inc. v. Edgar*, 101 Ill. 2d 315, 327, 461 N.E.2d 1365 (1984) (when the legislature has declared the public policy of the state by enacting a statute, the judicial branch must defer to that pronouncement, and a modification of such policy must be made by the legislature, and not the judiciary). Moreover, plaintiff cites no cases involving unmarried persons where a support obligation has been imposed on a person who is not the natural father of a child born as a result of heterologous artificial insemination.

*Witbeck* is an instructive case. In *Witbeck*, the second case decided under section 3(a) of the Act, a husband and wife consulted a nurse clinician regarding the artificial insemination procedure. During the consultation, the husband made it clear that he did not consent to the procedure and his wife's attempt to become pregnant. *Witbeck*, 281 Ill. App. 3d at 503. Without her husband's knowledge, the wife underwent the artificial insemination procedure and became pregnant. Three months later, the wife filed for divorce and further petitioned for child support. *Witbeck*, 281 Ill. App. 3d at 503. Although the wife acknowledged that the husband did not give written consent to her artificial insemination, she nonetheless petitioned to have the husband declared the legal father of her child. *Witbeck*, 281 Ill. App. 3d at 504.

The trial court found that the husband did not consent to the insemination procedure. The appellate court affirmed and further decided that written consent was mandatory under the Act as follows:

> "We conclude that the legislature intended a husband's written consent to be a prerequisite to the establishment of the legal father-child relationship and the imposition of a support obligation. The several provisions of section 3 of the Act which address the consent requirement would be superfluous if the failure to obtain the husband's written consent would not affect the legal status of the individuals involved." *Witbeck*, 281 Ill. App. 3d at 506.

Since there was no evidence of the husband's consent, written or otherwise, *Witbeck* further stated that it was not deciding whether the failure to obtain written consent would be an absolute bar to the establishment of the father-child relationship where the conduct of the father otherwise demonstrated his consent. *Witbeck*, 281 Ill. App. 3d at 506-07.

Plaintiff attempts to distinguish *Witbeck* by arguing that while there was no evidence of consent whatsoever in *Witbeck*, the complaint in the instant case alleges that defendant fully participated in and supported defendant's insemination procedure. In our view, however, Illinois courts have decided the issue of consent narrowly. See K. De Haan, Note, *Whose Child am I? A Look at How Consent Affects a Husband's Obligation to Support a Child Conceived Through Heterologous Artificial Insemination*, 37 Brandeis L.J. 809, 823-24 (1999).

All of the cases cited by plaintiff have arisen in the marital context whereas the parties here are not married. In the instant case, the trial court's comments indicated that it considered the Act requirement of the husband's written consent to be a safeguard. In granting defendant's motion to dismiss, the trial court stated:

> "The law of this state would require a husband to consent, to

agree in writing to be responsible for the birth to his wife of a child by artificial insemination. The court does not find it to be rational that unmarried couples would have less safeguards in such a matter.

This court holds that parentage of a child is far too important to hinge on the credibility of a witness alleging an oral promise to support a child born of artificial insemination, however intense the romance may have been between the parties."

In our view, this reasoning of the trial court is well founded. We hold that, as a minimum, section 3(a) requires written consent before an unmarried man becomes legally obligated to support a child born as a result of heterologous artificial insemination.

## II. SUBJECT MATTER JURISDICTION

■ We agree with plaintiff's assertion that the trial court erred when it stated in its order that it lacked subject matter jurisdiction. After holding that Illinois law requires, as a minimum, the defendant's written consent to support a child conceived through heterologous artificial insemination, the court concluded:

"We have no written contract, no DNA verification of parentage, no wedding and, therefore, no subject matter jurisdiction in this court."

Circuits courts are courts of general jurisdiction and the trial court had jurisdiction to hear the case. *In re Marriage of Wojcicki*, 135 Ill. App. 3d 248, 251, 481 N.E.2d 939 (1985) (a trial judge in the domestic relations division of the circuit court constitutionally has jurisdiction to hear all justiciable matters). Notwithstanding the trial court's comments, we note that the court dismissed the case on its merits. Accordingly, the court's misstatement that it lacked jurisdiction did not affect the outcome of the case and was harmless error.

## III. ILLINOIS PARENTAGE ACT

■ No dispute exists that the Act does not discriminate between married and unmarried women. However, plaintiff argues that section 3 of the Act unconstitutionally discriminates between children born as a result of artificial insemination to married couples versus unmarried couples. We disagree.

As previously discussed, the Act governs the treatment of a child born as a result of heterologous artificial insemination. The Act expressly contemplates a "husband" and "wife" marital arrangement as a prerequisite to the establishment of a father-child relationship and provides:

"[W]ith the consent of her husband, a wife is inseminated [heterologously] \*\*\*, the husband shall be treated in law as if he were

the natural father of a child thereby conceived. The *husband's consent must be in writing* \*\*\*." (Emphasis added.) 750 ILCS 40/3(a) (West 1998).

It is the public policy of the State of Illinois that every child has the rights of physical, mental, emotional and monetary support from his parents. See 750 ILCS 45/1.1 (West 1998). However, the court does not have the authority to establish a parent-child relationship where none legally exists. *In re Marriage of Adams*, 297 Ill. App. 3d 156, 161, 701 N.E.2d 1131 (1998). In the instant case, no parent-child relationship exists. See *In re Visitation with C.B.L.*, 309 Ill. App. 3d 888, 894-95, 723 N.E.2d 316 (1999) (former same-sex partner of woman who gave birth to child by artificial insemination lacked standing to petition for visitation under Illinois statute). The Illinois legislature, in establishing policy through statutory enactments, including the Act, has limited the circumstances under which a person can be determined to have parental rights and responsibilities. We hold that the Act does not discriminate either against unmarried women or children born to unmarried women.

## IV. FRAUDS ACT

Defendant's motion to dismiss also alleged that the purported agreement was unenforceable under the Frauds Act. Although the trial court did not refer to the Frauds Act in its dismissal of the complaint, our review of the trial court's dismissal under sections 2—615 and 2—619 is *de novo*. 735 ILCS 5/2—615, 2—619 (West 1998). In support of the motion to dismiss, the defendant cites *Opdahl v. Johnson*, 306 Ill. App. 145, 28 N.E.2d 308 (1940). However, because we have held that the trial court did not err in dismissing the complaint on other grounds, we deem it unnecessary to reach this issue.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

COHEN, P.J., concurs.

JUSTICE TULLY, dissenting:

The use of the terms "husband" and "wife" in section 3(a) of the Illinois Parentage Act (750 ILCS 40/3 (West 1999)) make clear that this provision applies only to married persons seeking to conceive children through heterologous artificial insemination. As plaintiff and defendant in this case were not married at the time of the procedure, the Act simply does not apply. The majority concludes, nevertheless, that

because written consent is "mandatory" under the Act for a husband to become legally obligated for a child produced by artificial insemination, written consent is likewise mandated for an unmarried man to become legally obligated. In my opinion, however, this narrow construction of the Act, and the majority's holding that "written consent" is an indispensable condition precedent to the imposition of a parental obligation, is historically moribund and contrary to basic fairness. Here, plaintiff, an unmarried African-American woman, was allegedly induced to undergo *in vitro* fertilization based on the promises and representations of defendant, plaintiff's partner of 10 years, that he would support any children resulting from the procedure. As inducement, defendant agreed to pay for the process of artificial insemination, accompanied plaintiff to doctors' examinations, and injected plaintiff with the medications necessary to enhance her fertility. Defendant further participated in determining the ethnicity of the donor and selected a Caucasian donor so that the children would reflect his ethnicity and would appear to be his and plaintiff's natural offspring. When twin boys were born in 1993, defendant acknowledged them as his own, held himself out as their father, and provided financial support for the children for the next three years. Put plainly, on these facts, it seems an absurd result that "public policy" is invoked to bar plaintiff any means of recovery and to allow defendant a means to escape all parental accountability.