IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-275

No. COA20-868

Filed 15 June 2021

Warren County, No. 18 CVD 225

WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES,

On behalf of ERICKA GLENN, Plaintiff,

v.

ANTHONY J. GARRELTS, Defendant.

Appeal by Defendant from an order entered on 10 July 2020 by Judge Adam S. Keith in Warren County District Court. Heard in the Court of Appeals 28 April 2021.

*Banzet, Thompson, Styers, & May, PLLC, by Mitchell G. Styers and Jill A. Neville, for Defendant-Appellant.*

*No brief for Plaintiff-Appellee.*

JACKSON, Judge.

¶ 1   This case presents a novel choice-of-law issue as between the artificial insemination laws of North Carolina and those of Virginia. In order to determine whether a sperm donor qualifies as the "parent" of a minor child conceived via artificial insemination, we must decide whether to apply the paternity laws of the state where the insemination and birth occurred (here, Virginia), or alternatively the laws of the state where the paternity action was initiated (here, North Carolina).

Because our traditional choice of law principles direct us to apply the law of the situs of the claim, we conclude that this action should be governed by the substantive laws of Virginia. We accordingly reverse and remand for further proceedings consistent with this opinion.

## I.    Factual and Procedural Background

¶ 2      Plaintiff Ericka Glenn met and befriended Defendant Anthony Garrelts in 2010 in Virginia. Ms. Glenn and her partner wanted to conceive a child together, and they asked Defendant to serve as a sperm donor in order to artificially inseminate Ms. Glenn. Defendant agreed, and the parties entered into a "verbal contract" to solidify their understanding. The artificial insemination and conception[1] occurred in Virginia, and Ms. Glenn continued to live in Virginia throughout her pregnancy. The child was born in December 2011, and Ms. Glenn was the only parent who was listed on the birth certificate.

¶ 3      In late 2012, Defendant, Ms. Glenn, and Ms. Glenn's partner appeared in court in James City County, Virginia, in order for Defendant to voluntarily "sign over his

---

[1] The record does not specify whether the artificial insemination occurred with the help of a physician or medical facility, or whether instead the parties conducted the insemination privately with no physician assistance. On remand, this matter should be investigated by the trial court, as it may be dispositive in determining whether Defendant qualifies as a legal parent under Virginia law. *See, e.g., Bruce v. Boardwine,* 64 Va. App. 623, 628-31, 770 S.E.2d 774, 776-77 (2015) (holding that the Virginia Assisted Conception Statute was inapplicable where the child was conceived through an at-home "turkey baster insemination" with no physician or medical facility involved).

parental rights" so that Ms. Glenn's partner could formally adopt the child. The exact outcome of this court proceeding is unknown, as the appellate record in this case does not contain a copy of the Virginia court order. In 2014, Ms. Glenn moved with the child to California, and soon thereafter begin receiving public assistance from the state. Defendant was residing in Norlina, North Carolina at the time.

¶ 4 In March 2019, the Warren County Department of Social Services in North Carolina ("DSS") filed an action in Warren County District Court alleging that Defendant was the father of the minor child and that he was obligated to pay child support. Defendant filed an Answer, contending that he was under no obligation to pay child support. A hearing was held on the matter on 10 July 2020 in Warren County District Court. During the hearing, Defendant's counsel argued that this matter should be governed by the law of Virginia, where the child had been conceived and born. Defendant's counsel explained that under a Virginia statute,[2] a sperm donor does not legally qualify as a parent, and thus Defendant did not owe any child support under Virginia law. Counsel for DSS disagreed, arguing that under the full faith and credit doctrine, the trial court was under no obligation to apply Virginia law, and that the law of North Carolina should apply as a matter of public policy.

---

[2] Va. Code Ann. § 20-158 provides that "[a] donor is not the parent of a child conceived through assisted conception, unless the donor is the spouse of the gestational mother." Va. Code Ann. § 20-158(A)(3) (2019).

¶ 5        The trial court issued an order on 24 August 2020 adjudicating Defendant to be the biological father of the child and ordering him to (1) pay $13,642.75 in past due child support; (2) obtain medical insurance for the child; and (3) pay $50.00 in monthly child support thereafter.  Regarding the choice of law issue, the trial court concluded as follows:

> (4) The Court finds from the testimony and argument that, while the child was born in the Commonwealth of Virginia, and that there is a Virginia statute defining paternity, the Virginia paternity statute is not controlling in this action, which was brought pursuant to North Carolina statutes regarding the establishment of paternity and payment of child support.
>
> (5) The Court finds from the testimony and arguments that there is no known provision in current North Carolina statutory or case law which provides an exception or alternative to establishing paternity in this case and entering an order that the father of the child pay child support as calculated by the North Carolina Child Support Guidelines.

Defendant submitted a timely notice of appeal on 10 September 2020.

## II.    Analysis

¶ 6        On appeal, Defendant argues that the trial court erred in adjudicating him to be the father of the child and in ordering him to pay child support.  Defendant contends that the trial court should have applied the law of Virginia, rather than the law of North Carolina, in making its paternity determination.  We agree with Defendant that the trial court erred in applying North Carolina law, and remand for

a new proceeding.

## A. Choice of Law vs. Full Faith and Credit

We first address the applicable principles of law. Defendant, DSS, and the trial court all apparently agreed that the full faith and credit doctrine was dispositive in determining whether Virginia law should be applied. The parties are mistaken on this point.

The full faith and credit clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. This provision has been interpreted to mean that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Freeman v. Pac. Life Ins. Co.*, 156 N.C. App. 583, 586, 577 S.E.2d 184, 186 (2003) (internal marks and citation omitted). In other words, the doctrine requires that a "foreign judgment be given the same force and effect it enjoys in the state where it was rendered." *Id.* For example, North Carolina will provide full faith and credit to "[a] paternity determination made by another state" when such a determination is made "(1) [i]n accordance with the laws of that state, and (2) [b]y any means that is recognized in that state as establishing paternity[.]" N.C. Gen. Stat. § 110-132.1 (2019).

However, the full faith and credit doctrine is inapplicable here because this

case does not involve an existing judgement or order from another state. Based on the record, it does not appear that the minor child here has ever been the subject of any previous paternity or child support order, and thus there is no foreign order for us to credit. Rather, this case involves determining the paternity of a child who was conceived (via artificial insemination) and born in Virginia, but who is the subject of a child support action in North Carolina. The issue before us thus becomes whether we should apply the substantive law of Virginia or North Carolina in adjudicating this paternity claim.

¶ 10 When a court is faced with a situation such as this—litigation that features significant ties to multiple states, each of which has conflicting substantive laws— the court must engage in a choice of law analysis to determine which state's laws should be applied to the claims raised in the suit. *See Boudreau v. Baughman*, 322 N.C. 331, 333, 368 S.E.2d 849, 852 (1988). Because the application of "conflict of law rules is a legal conclusion," we conduct a *de novo* review of the trial court's decision to apply North Carolina law. *Harco Nat. Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 694, 698 S.E.2d 719, 724 (2010).

**B. Selecting the Proper Choice of Law Test**

¶ 11 In determining which state's laws apply to a given matter, there are two primary choice of law doctrines that a court may choose from. The most "traditional" conflict of law doctrine in North Carolina is *lex loci*, which provides that "matters

affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim." *Boudreau,* 322 N.C. at 335, 368 S.E.2d at 853-54. In contrast, the *lex fori* test provides that "remedial or procedural rights are determined by *lex fori*, the law of the forum," i.e., North Carolina. *Id.* In other words, "[u]nder North Carolina choice of law rules, we apply the substantive law of the state where the cause of action accrued and the procedural rules of North Carolina." *Martin Marietta Materials, Inc. v. Bondhu, LLC*, 241 N.C. App. 81, 83, 772 S.E.2d 143, 145 (2015) (internal marks and citation omitted). For example, *lex fori* will govern the technical and procedural matters involved in any lawsuit, such as "determining the [applicable] statute of limitations," *Stetser v. TAP Pharm. Prod., Inc.*, 165 N.C. App. 1, 16, 598 S.E.2d 570, 581 (2004), or determining "the applicable burden of proof," *Taylor v. Abernethy*, 174 N.C. App. 93, 103, 620 S.E.2d 242, 249 (2005).

¶ 12     On the other hand, *lex loci* will be applied when determining substantive matters, such as what causes of action are available to a plaintiff or what damages a plaintiff may recover. *Stetser*, 165 N.C. App. at 16, 598 S.E.2d at 581. *Lex loci* has traditionally been applied in cases "involving tort or tort-like claims." *SciGrip, Inc. v. Osae*, 373 N.C. 409, 420, 838 S.E.2d 334, 343 (2020). *See also Gbye v. Gbye*, 130 N.C. App. 585, 587, 503 S.E.2d 434, 436 (1998) (recognizing that our state courts maintain a "strong adherence to the traditional application of the *lex loci deliciti* doctrine when choice of law issues arise"). *Lex loci* has previously been used to

adjudicate wrongful death claims, trade secret claims, alienation of affection claims, and breach of contract claims. *See Gbye*, 130 N.C. App. at 585, 503 S.E.2d at 434 (wrongful death); *SciGrip*, 373 N.C. at 421, 838 S.E.2d at 344 (trade secrets); *Jones v. Skelley*, 195 N.C. App. 500, 505, 673 S.E.2d 385, 389 (2009) (alienation of affection); *Tennessee Carolina Transp., Inc. v. Strick Corp.*, 283 N.C. 423, 440, 196 S.E.2d 711, 722 (1973) (breach of contract).

¶ 13 Here, the question becomes whether the present action is governed by the *lex loci* test or the *lex fori* test—in other words, does a paternity statute qualify as a procedural or substantive law? We conclude that a paternity law is substantive in nature and thus that the *lex loci* test should be applied. A "substantial right" has been defined by this Court as "a legal right affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a person is entitled to have preserved and protected by law." *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 677-78, 657 S.E.2d 55, 61 (2008) (internal marks and citation omitted). A law that formally adjudicates a person's status as a parent (or non-parent) of a child meets this definition, as parenthood is one of the most fundamental protected rights in our entire legal system. We accordingly conclude that the *lex loci* test should be applied to determine which state's paternity law governs this dispute.

## C. Applying *Lex Loci*

¶ 14 The *lex loci* test states that the rights of the parties are governed by "the law of the situs of the claim." *Boudreau*, 322 N.C. at 335, 368 S.E.2d at 854. This Court has not previously had occasion to address what qualifies as "the situs of the claim" when the claim in question is a paternity claim or child support claim. In a tort-based action, *lex loci* instructs that we should apply "the substantive law of the state where the injury or harm was sustained or suffered, which is, ordinarily, the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place." *SciGrip*, 373 N.C. at 420, 838 S.E.2d at 343 (internal marks and citation omitted). In a contract-based action, *lex loci* states that "the law of the place where the contract is executed governs the validity of the contract." *Morton v. Morton*, 76 N.C. App. 295, 298, 332 S.E.2d 736, 738 (1985).

¶ 15 Under the unique circumstances of the present case, we conclude that the proper "situs of the claim" of the parties' paternity dispute is Virginia. Here, Virginia is the state where Defendant and Ms. Glenn entered into a "verbal contract" regarding the artificial insemination; Virginia is where the artificial insemination occurred; Virginia is where Ms. Glenn lived during the entirety of her pregnancy; Virginia is where the child was born; and Virginia is where the mother and child lived together for the first several years of the child's life. Under the *lex loci* tort theory, Virginia thus qualifies as the state where "the last event necessary to make the actor liable" occurred, in that it was the state where Ms. Glenn was impregnated and gave

birth. Under the *lex loci* contractual theory, Virginia also qualifies as the state where the contract was executed, in that it was the state where Ms. Glenn and Defendant entered into a "verbal contract" regarding the artificial insemination.

¶ 16 Moreover, this result is supported by persuasive caselaw from other jurisdictions. For example, in *In re Marriage of Adams,* 133 Ill. 2d 437, 447, 551 N.E.2d 635, 639 (1990), the Illinois Supreme Court concluded that Florida law (rather than Illinois law) should apply to a paternity and child support action for a child conceived via artificial insemination. There, a married woman living in Florida underwent artificial insemination at a medical clinic, in which she was "artificially inseminated with semen of a man other than her husband." *Id*. at 440, 551 N.E.2d at 636. The husband and wife continued to live together throughout her pregnancy, and the child was born in Florida. *Id*. The couple separated when the child was several months old, and the wife and child moved to Illinois, where she subsequently filed a petition for child support. *Id*. In his answer to the petition, the husband acknowledged that the child was born during the marriage but asserted that he was not the father because the child was conceived as a result of artificial insemination to which he did not consent. *Id*. at 441, 551 N.E.2d at 636. The trial court adjudicated the husband the legal father of the child under Illinois law. *Id*. at 442-43, 551 N.E.2d at 637.

¶ 17 On appeal, the Illinois Supreme Court recognized that the case presented a

choice of law issue, because Illinois law provided that children conceived via artificial insemination to a married couple were presumed legitimate, whereas Florida law provided that such children were only legitimate if both the husband and wife had consented in writing to the artificial insemination. *Id*. at 443-44, 551 N.E.2d at 637-38. Applying Illinois choice of law rules, the Court held that the law of Florida should govern the paternity action because Florida had "the more significant relationship to the dispute." *Id*. at 447, 551 N.E.2d at 639. The Court found it relevant that "[the wife] was . . . inseminated in Florida, the Adamses were residents of Florida at that time and continued to live there during the course of the pregnancy, and the child was born in Florida." *Id*.

¶ 18        The Illinois Supreme Court concluded that "whether a parent-child relationship exists . . . as a result of [] artificial insemination should not depend on the laws of every State in which the family members may find themselves in the future." *Id*. The Court noted that this rule would best "fulfill the participants' expectations and [] help ensure predictability and uniformity of result," because the parties participating in an artificial insemination procedure will naturally "expect that their own local law will govern the relationships created by it." *Id*. *See also In re K.M.H.*, 285 Kan. 53, 56-62, 169 P.3d 1025, 1030-32 (2007) (holding that a paternity action for twins conceived via artificial insemination should be governed by the law of Kansas because the "original oral agreement with [the sperm donor] took place in

Kansas; the parties reside in Kansas; the sperm resulting in the pregnancy was given to [the mother] by [the donor] in Kansas . . . [and] the twins were born in Kansas and reside in Kansas").

¶ 19        We agree with this approach.   Under the *lex loci* doctrine, following the paternity laws of the state where the child is conceived not only fulfills the parties' natural expectations, but helps ensure predictable and equitable results.  If we were to accept DSS's arguments—and hold that a paternity action is simply governed by the laws of whichever state the plaintiff chooses to sue in—this would encourage forum-shopping, as a parent seeking a paternity determination could simply travel to whichever state has the most favorable laws.  *See Hamdan v. Freitekh*, 271 N.C. App. 383, 386, 844 S.E.2d 338, 341 (2020) (noting that an important goal of child support and custody laws is "to prevent parents from forum shopping their child custody disputes and assure that these disputes are litigated in the state with which the child and the child's family have the closest connection") (internal marks and citation omitted).  We cannot condone such a result, and instead conclude that, under our state's choice of law principles, we must follow the paternity law of the state where the insemination and conception occurred.[3]   Because that state here is

---

[3] However, we emphasize that no single factor is dispositive in determining which state qualifies as the "situs of the claim" for a paternity action under the *lex loci* theory.  This analysis is highly fact-based and individualized and must be carefully considered under the unique circumstances of each case.

Virginia, the trial court erred in applying North Carolina law to this matter.

### III.   Conclusion

Because this matter was decided in the trial court under the inappropriate law, and because the parties have not had an opportunity to brief and argue the relevant issues under Virginia law,[4] we reverse the trial court's order and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges DIETZ and COLLINS concur.

---

[4] We make no comment on the ultimate outcome of this matter under Virginia law—it is the role of the trial court to determine on remand whether Defendant qualifies as the child's legal parent under the applicable Virginia law.